IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

| | | |
|---|---|---|
| M NICOLAS ENTERPRISES, LLC,<br>d/b/a WORLD WIDE HEALTH SERVICES,<br>and MICHELLE NICOLAS, individually,<br><br>    Plaintiffs,<br><br>        v.<br><br>THE UNITED STATES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Agreed-Upon Redacted Version**<br><br>█████████████<br><br>No. 20-691<br>(Senior Judge Smith) |

## DEFENDANT'S MOTION TO DISMISS IN PART PLAINTIFFS' TRANSFER COMPLAINT

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss virtually all claims in the transfer complaint (complaint). Pls. Transfer Compl., ECF No. 57, Aug. 21, 2020. The only claim that is not the subject of this motion to dismiss is the bid protest claim asserted by World Wide Health Services (WWHS) pursuant to 28 U.S.C. § 1491(b)(1). With the exception of that bid protest claim, the Court does not possess jurisdiction to entertain the claims in the complaint. In support of our motion, we rely upon the following brief and the accompanying appendix.

## STATEMENT OF THE ISSUES

1. Whether plaintiffs' bid protest claim under 28 U.S.C. § 1491(a)(1) is foreclosed by controlling precedent, which holds that the remedy afforded by 28 U.S.C. § 1491(b)(1) is exclusive in procurement cases such as this one.

2.      Whether the Court possesses jurisdiction to entertain plaintiffs' claims pursuant to the Administrative Procedure Act (APA) and the Fifth Amendment to the United States Constitution.

3.      Whether the Court possesses jurisdiction to entertain plaintiffs' claims under the Contract Disputes Act (CDA), when plaintiffs do not (and cannot) allege that they submitted a claim to the contracting officer prior to filing suit and received a final decision from the contracting officer.

4.      Whether the Court possesses jurisdiction to entertain Count I to the extent that it is asserted by Michelle Nicolas, when WWHS was the actual bidder, Ms. Nicolas did not submit her own bid, and she lacks standing to assert a bid protest claim.

## STATEMENT OF THE CASE

In May 2017, the Department of Veterans Affairs (VA) Network Contracting Office 8 issued an "open and continuous" solicitation to procure adult day care services at contractors' facilities under indefinite delivery contracts.  Appx1.  The VA intended to make multiple awards. *Id.*  In January 2018, WWHS submitted a proposal.  Appx62.  As part of the evaluation process, the agency scheduled and inspected the WWHS facility.  Compl. ¶¶ 14-18.  Thereafter, the VA provided WWHS with an inspection report identifying deficiencies that would have precluded any contract award.  *Id.* ¶¶ 19-22.  According to the complaint, plaintiffs attempted to remedy one of those deficiencies by purchasing and installing a fire alarm system.  *Id.* ¶ 66; *see id.* ¶¶ 21-29, 31-34.  Following a second inspection, WWHS was not awarded a contract.  *See id.* ¶¶ 35, 37-47.  The complaint alleges, among other things, discrimination based on race.  *See, e.g.*, *id.* ¶¶ 1-3, 10, 36, 44, 46, 49, 51, 58-59.

In May 2019, plaintiffs filed a complaint against the VA in United States District Court for the Southern District of Florida asserting claims for alleged civil rights violations (28 U.S.C. § 1981) and breach of an implied-in-law contract.  Pls. Original Compl., ECF No. 1, May 13, 2019.  After the VA filed a motion to dismiss, in January 2020, plaintiffs filed an amended complaint against the VA and its Secretary in his official a capacity (defendants), alleging two APA claims and a CDA claim.  Pls. Am. Compl., ECF No. 35, Jan. 22, 2020.

In April 2020, defendants filed a motion to dismiss plaintiffs' amended complaint, explaining that the district court lacked jurisdiction over the CDA claim and that plaintiffs had failed to exhaust their administrative remedies under the CDA.  Defendants also explained that the district court lacked jurisdiction over the two claims brought under the APA because, among other reasons, they were precluded by the CDA and Tucker Act.

Shortly thereafter, the district court transferred the case to this Court, noting that the complaint contained a contract claim for more than $10,000, a claim beyond the district court's jurisdiction at a minimum because it exceeds the court's Little Tucker Act jurisdiction.  Order, ECF. No. 40, Apr. 9, 2020.  Specifically, the court explained:

> The Court finds 28 U.S.C. § 1346(a)(2) dispositive.  This Court lacks subject-matter jurisdiction over Plaintiffs' claims because they properly belong before the United States Court of Federal Claims.  This statute operates as a grant of jurisdiction and waiver of sovereign immunity for certain types of claims.  For contract claims seeking more than $10,000, the Court of Federal Claims has exclusive jurisdiction.  Further, the statute unambiguously states: '[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express of [sic] implied contract . . . .'  28 U.S.C. § 1346(a)(2).  Thus, under the Court's authority under 28 U.S.C. § 1631, this action must be transferred to cure this jurisdictional defect.

Although the district court's transfer order correctly observed that any contract claims for more than $10,000 must be filed in the Court of Federal Claims and considered the more specific

limit on its jurisdiction, the CDA, the district court did not consider that statute's mandatory exhaustion terms and consequent effect on this Court's jurisdiction, discussed further below.

In July 2020, plaintiffs filed their transfer complaint in this Court pursuant to RCFC 3.1. *See* ECF No. 52, July 27, 2020, The Court struck that complaint for non-compliance with the Court's rules. Order, Aug. 12, 2020, ECF No. 54.

In August 2020, plaintiffs filed a new version of the transfer complaint, which is the subject of this motion. *See* Compl., ECF No. 57, Aug. 21, 2020. That complaint alleges three counts. Count I appears to assert bid protest claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and 28 U.S.C. § 1491(b)(1). Compl. ¶¶ 8-9, 48-52. Count I mistakenly refers to these statutory provisions as part of the "Contract Disputes Act," but it is reasonably clear from plaintiffs' citation to "42 U.S.C. § 1491(A)(1) & 1491(B)(1)," that plaintiffs are intending to invoke this Court's bid protest jurisdiction under the Tucker Act in Count I. In contrast, Count II is an APA claim pursuant to 5 U.S.C. § 706 that is predicated upon alleged violations of the equal protection component of the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 53-64. Finally, Count III asserts breach of contract claims pursuant to "41 U.S.C. § 7101, Et Seq.," which is the CDA. Compl. ¶¶ 65-71.

## ARGUMENT

As demonstrated below, the Court should dismiss all of the complaint except for the bid protest claim asserted by WWHS pursuant to 28 U.S.C. § 1491(b)(1).

### I. The Court's Jurisdiction Is Limited

Rule 12(b)(1) provides that "a party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction." RCFC 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

"The Court of Federal Claims is a court of limited jurisdiction." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). Congress created the Court to permit "a special and limited class of cases to proceed against the United States." *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996) (citation and internal quotation marks omitted). The Court "'take[s] cognizance only of those [claims] which by the terms of some act of Congress are committed to it.'" *Hercules*, 516 U.S. at 423 (quoting *Thurston v. United States*, 232 U.S. 469, 476 (1914)) (second alteration in original). The Tucker Act is the "central provision establishing the jurisdiction of the" Court of Federal Claims. *See United States v. Testan*, 424 U.S. 392, 397 (1976); *accord Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). The Tucker Act "is only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398. Instead, "[a] substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting 28 U.S.C. § 1491). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *Id.* at 216. "[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 216-217 (quoting *Testan*, 424 U.S. at 400); *see generally Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020). In other words, "that source must be 'money-mandating.'" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* portion) (citation omitted).

II.     Plaintiffs Bear The Burden Of Demonstrating Jurisdiction

The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. *Matson Navigation Co. v. United States*, 284 U.S. 352, 359 (1932) (citations

omitted); *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353 (2006), *aff'd*, 552 U.S. 130 (2008). Rule 12(b)(1) motions may raise "facial" or "factual" challenges to the Court's jurisdiction. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). When a Rule 12(b)(1) motion challenges the facial sufficiency of the complaint to establish subject matter jurisdiction, the Court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *See Cedars-Sinai Medical Center*, 11 F.3d at 1584 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). If the Rule 12(b)(1) motion raises a factual challenge, however, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Cedars-Sinai Medical Center*, 11 F.3d at 1584 (internal citations omitted). "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding" by the Court. *Id.* (citations omitted). "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* (citations omitted); *accord Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747-48 (Fed. Cir. 1988). The party invoking jurisdiction must demonstrate disputed jurisdictional facts by a "preponderance of the evidence." *Taylor*, 303 F.3d at 1359; *Reynolds*, 846 F.2d at 747-48.

## III. The Court Does Not Possess Jurisdiction To Entertain The Bid Protest Claim In Count I Pursuant To 28 U.S.C. § 1491(a)(1)

Count I of the complaint asserts bid protest claims pursuant to both 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1491(b)(1). Compl. ¶¶ 8-9, 48-52. The only claim that is properly before the Court at this time is the bid protest claim asserted by WWHS pursuant to section 1491(b)(1). However, as demonstrated below, the Court does not possess jurisdiction to entertain plaintiffs' bid protest claim under section 1491(a)(1).

Under section 1491(a)(1), the Court possesses jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). When a party submits a bid or proposal in response to a request by the United States, an implied-in-fact contract arises between the United States and that party under which the United States is obligated to consider the party's bid or proposal honestly and fairly. *Heyer Prods. Co. v. United States*, 177 F. Supp. 251, 252 (Ct. Cl. 1959). "It is settled that in cases of this kind" the claims court "will not award recovery of lost profits" and "damages cannot exceed bid preparation costs." *See Excavation Constr., Inc. v. United States*, 494 F.2d 1289, 1290 (Ct. Cl. 1976) (citations omitted).

Since 1996, the Court's jurisdiction under section 1491(a)(1) has been limited to protests of nonprocurement actions. *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1246 (Fed. Cir. 2010). Grants, cooperative agreements, and prize competitions are examples of nonprocurements. *See, e.g.*, *Frankel v. United States*, 842 F.3d 1246, 1250-51 (Fed. Cir. 2016); *Hymas v. United States*, 810 F.3d 1312, 1329-30 (Fed. Cir. 2016). This Court and district courts now possess concurrent jurisdiction to entertain nonprocurement protests. *Res. Conservation*, 597 F.3d at 1246 & n.12. However, the Federal Circuit has held that this Court's jurisdiction under section 1491(b)(1) is "exclusive where 1491(b)(1) provide[s] a remedy (in procurement cases)." *Id.* at 1246 ("We agree that Congress intended the 1491(b)(1) jurisdiction to be exclusive where 1491(b)(1) provided a remedy (in procurement cases).").

In this case, there is no dispute that plaintiffs are challenging the VA's procurement of services. *See* Compl. ¶ 9 ("seeking mandatory or injunctive relief to remedy violations of statute or regulation in connection with a procurement"). Indeed, the solicitation at issue demonstrates that the challenged contract award by the VA is a procurement of services. Appx1 ("This is an

open and continuous solicitation for VISN 8 Community Adult Day Care Home Services. . . ."). Thus, the "exclusive" remedy for plaintiffs to challenge the VA's contract award decision is section 1491(b)(1), and the Court should dismiss Count I to the extent it asserts a bid protest claim under section 1491(a)(1). *See Res. Conservation*, 597 F.3d at 1246.[1]

IV. The Court Does Not Possess Jurisdiction To Entertain The APA And Fifth Amendment Claims In Count II

Count II of the complaint is an APA claim predicated upon alleged violations of the Fifth Amendment to the United States Constitution. *See* Compl. ¶¶ 52-64. However, it concerns the contract award and, thus, may simply be an elaboration on the bid protest claim brought in Count I -- in which case, the Court should dismiss Count II except for any bid protest claim pursuant to section 1491(b)(1) for the reasons discussed above. To the extent Count II reflects an attempt to bring a separate claim for violation of the APA, Count II should be dismissed in its entirety because it is well-established that the Court does not possess jurisdiction to entertain APA claims. *See Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993). Likewise, this Court does not possess jurisdiction to entertain Fifth Amendment claims based on due process or equal protection allegations because they are not based upon a money-mandating provision of law. *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013); *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Accordingly, the Court should dismiss Count II for lack of jurisdiction.

[1] *See, e.g., WHR Grp., Inc. v. United States*, 115 Fed. Cl. 386, 397 n.11 (2014) ("To the extent Lexicon requests relief based on the implied covenant of good faith and fair dealing, the court *sua sponte* dismisses its claim for lack of subject matter jurisdiction."). *But see, e.g., Castle-Rose, Inc. v. United States*, 99 Fed. Cl. 517, 530 (2011) (noting that *Resource Conservation* has been applied "in varying ways," including permitting implied covenant of good faith and fair dealing claims).

V. The Court Does Not Possess Jurisdiction To Entertain Count III Because Plaintiffs Did Not Submit A Claim Prior To Filing A CDA Claim

Count III asserts breach of contract claims pursuant to the CDA. *See* Compl. ¶¶ 65-71. Indeed, the CDA is plaintiffs' exclusive remedy for breach of contract. *See Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995); *see also* 41 U.S.C. § 7102(a)(2) (the CDA applies to "any express or implied contract . . . entered into by an executive agency for . . . the procurement of services"); 5 U.S.C. § 101 (designating the VA as an "executive agency"); *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 463-64 (2019) (discussing difference between this Court's general contract jurisdiction and CDA jurisdiction).

And while there is no doubt this Court possesses jurisdiction to entertain a CDA claim, it may do so only when the CDA's jurisdictional prerequisites have been satisfied. Here, they evidently have not. For the Court to exercise CDA "jurisdiction . . . requires both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citation omitted); *see* also 28 U.S.C. § 1491(a)(2) ("jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the [CDA] . . . on which a decision of the contracting officer has been issued under . . . that Act"); *Diversified Maint. Sys., Inc. v. United States*, 103 Fed. Cl. 431, 437-38 (2012) ("Because DMS must pursue its claims under the CDA, it must meet the jurisdictional requirements of that statute . . . ."). Likewise, the CDA, 41 U.S.C. § 7103(a) and (b), provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be in writing," "shall be submitted to the contracting officer for a decision," and "[f]or claims of more than $100,000 . . . the contractor shall certify [the claim]."

In this case, plaintiffs do not (and cannot) allege that they have satisfied the jurisdictional prerequisites to filing their breach of contract claims, including submitting a

"claim" under the CDA to Yamil Rodriguez, the contracting officer. Accordingly, the Court does not possess jurisdiction to entertain plaintiffs' breach-of-contract claims at this time.

VI. The Court Does Not Possess Jurisdiction To Entertain Count I To The Extent That It Is Asserted By Ms. Nichols

The only claim that is properly before the Court is the bid protest claim asserted by WWHS pursuant to section 1491(b)(1). However, both plaintiffs, WWHS and Ms. Nichols, purport to assert this claim. *See, e.g.*, Compl. ¶¶ 51 (alleging "liability to Plaintiffs" in Count I), 52 (alleging that "Plaintiffs are entitled to declaratory, injunctive and mandatory relief" in Count I). The Court does not possess jurisdiction to entertain Count I to the extent it is asserted by Ms. Nichols. The bid for a Government contract in this case was submitted by WWHS, not Ms. Nichols. Appx62; *see also* Appx96. Accordingly, Ms. Nichols cannot demonstrate that she is an "interested party" with standing to protest. *See Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citations omitted). Therefore, the Court should dismiss the bid protest claim asserted by Ms. Nichols in Count I.

CONCLUSION

For these reasons, the Court should dismiss the entire complaint for lack of jurisdiction, except for the bid protest claim by WWHS in Count I pursuant to 28 U.S.C. § 1491(b)(1), which is the only claim properly before the Court.[2]

[2] Assuming the Court dismisses the entire complaint for lack of jurisdiction, except for the bid protest claim by WWHS in Count I pursuant to 28 U.S.C. § 1491(b)(1), we respectfully request 30 days from the date of the Court's order to file the administrative record and that the parties file motions for judgment on the administrative record after the filing of the record. *See generally* RCFC 52.1, Appendix C. Should the Court determine that it possesses jurisdiction over any claims other than a bid protest claim that requires an answer (which it should not, for the reasons discussed above), we respectfully request 30 days from the date of the Court's order to file an answer.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ Zachary J. Sullivan
ZACHARY J. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 616-0320
E-mail: zachary.j.sullivan@usdoj.gov

OF COUNSEL:

KATHLEEN ELLIS
Attorney
Office of General Counsel
District Contracting National Practice
Group
Department of Veterans Affairs
222 Richmond Ave., Bldg 3, Rm 103
Batavia, NY 14020
Telephone: (202) 368-4316
E-mail: Kathleen.Ellis3@va.gov

*Counsel for Defendant*

September 25, 2020

APPENDIX

## INDEX TO APPENDIX

Document | Page

Solicitation (Omitting Attachments) (VA248-17-R-0713)....................1

Solicitation Amendment (VA248-17-R-0713) ....................61

Proposal, dated January 27 and 29, 2018....................62

Contracting Officer's Letter, dated August 8, 2018 ....................96

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
**OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30**

1. REQUISITION NO. VA248-16-AP-3660
PAGE 1 OF 60

2. CONTRACT NO.
3. AWARD/EFFECTIVE DATE
4. ORDER NO.
5. SOLICITATION NUMBER VA248-17-R-0713
6. SOLICITATION ISSUE DATE 05-11-2017

7. FOR SOLICITATION INFORMATION CALL:
a. NAME Rodney Cassidy
b. TELEPHONE NO. (No Collect Calls) 813-631-2828
8. OFFER DUE DATE/LOCAL TIME 5-10-2018 12:00 P.M.

9. ISSUED BY CODE 00248
Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)

8875 Hidden River Pkwy Suite 525
Tampa FL 33637

10. THIS ACQUISITION IS [X] UNRESTRICTED OR [ ] SET ASIDE: ______ % FOR:
[ ] SMALL BUSINESS
[ ] HUBZONE SMALL BUSINESS
[ ] SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS
[ ] WOMEN-OWNED SMALL BUSINESS (WOSB) ELIGIBLE UNDER THE WOMEN-OWNED SMALL BUSINESS PROGRAM
[ ] EDWOSB
[ ] 8(A)
NAICS: 624120
SIZE STANDARD: $11 Million

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
[X] SEE SCHEDULE

12. DISCOUNT TERMS

[ ] 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING N/A

14. METHOD OF SOLICITATION [ ] RFQ [ ] IFB [X] RFP

15. DELIVER TO CODE 00248
Department of Veterans Affairs
VISN 8 VAMCs

16. ADMINISTERED BY CODE 00248
Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)

8875 Hidden River Pkwy
Tampa FL 33637

17a. CONTRACTOR/OFFEROR CODE FACILITY CODE

TELEPHONE NO. DUNS: DUNS+4:

[ ] 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18a. PAYMENT WILL BE MADE BY CODE

PHONE: FAX:

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED
[ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | This is an open and continuous solicitation for VISN 8 Community Adult Day Care Home Services. The Government intends to award multiple contracts from this solicitation.<br><br>VISN wide solicitation for Adult Day Care Services Indefinite Delivery Contracts (Medicaid) which is issued under Authority 38 U.S.C. 1720. | | | | |

(Use Reverse and/or Attach Additional Sheets as Necessary)

25. ACCOUNTING AND APPROPRIATION DATA

26. TOTAL AWARD AMOUNT (For Govt. Use Only) $0.00

[ ] 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED.

[ ] 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

[X] 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED

[ ] 29. AWARD OF CONTRACT: REF. ______________ OFFER DATED ______________. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT)
30c. DATE SIGNED

31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT)
Yamil O. Rodriguez
Contracting Officer

31c. DATE SIGNED

## Table of Contents

**SECTION A.......................................................................................................................1**

A.1 SF 1449 SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS................1

**SECTION B - CONTINUATION OF SF 1449 BLOCKS.........................................................4**

B.1 CONTRACT ADMINISTRATION DATA.............................................................4
B.2 PRICE/COST SCHEDULE ...............................................................................7
B.3 PERFORMANCE WORK STATEMENT ..............................................................9

**SECTION C - CONTRACT CLAUSES .................................................................................15**

C.1 52.212-4 CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JAN 2017)....................................................................................................15
C.2 52.209-5 REPRESENTATION BY CORPORATIONS REGARDING AN UNPAID TAX LIABILITY OR A FELONY CONVICTION UNDER ANY FEDERAL LAW (DEVIATION)(MAR 2012)..........................................................................21
C.3 52.216-18 ORDERING (OCT 1995) .................................................................21
C.4 52.216-19 ORDER LIMITATIONS (OCT 1995)...................................................22
C.5 52.216-22 INDEFINITE QUANTITY (OCT 1995) ................................................22
C.6 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999).......................................22
C.7 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)...........23
C.8 52.232-19 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR (APR 1984) 23
C.9 VAAR 852.203-70 COMMERCIAL ADVERTISING (JAN 2008) ..............................23
C.10 VAAR 852.203-71 DISPLAY OF DEPARTMENT OF VETERAN AFFAIRS HOTLINE POSTER (DEC 1992).............................................................................23
C.11 VAAR 852.215-70 SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (JUL 2016)(DEVIATION) ............24
C.12 VAAR 852.215-71 EVALUATION FACTOR COMMITMENTS (DEC 2009)...............24
C.13 VAAR 852.219-9 VA SMALL BUSINESS SUBCONTRACTING PLAN MINIMUM REQUIREMENTS (DEC 2009)..........................................................................24
C.14 VAAR 852.219-71 VA MENTOR-PROTÉGÉ PROGRAM (DEC 2009).......................24
C.15 VAAR 852.219-72 EVALUATION FACTOR FOR PARTICIPATION IN THE VA MENTOR-PROTÉGÉ PROGRAM (DEC 2009)........................................................25
C.16 VAAR 852.232-72 ELECTRONIC SUBMISSION OF PAYMENT REQUESTS (NOV 2012).....................................................................................................25
C.17 VAAR 852.237-7 INDEMNIFICATION AND MEDICAL LIABILITY INSURANCE (JAN 2008) ..........................................................................................25
C.18 VAAR 852.237-70 CONTRACTOR RESPONSIBILITIES (APR 1984).........................26
C.19 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998).........................27
C.20 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS—COMMERCIAL ITEMS (JAN 2017).....................27
C.21 MANDATORY WRITTEN DISCLOSURES ..........................................................28

**SECTION D - CONTRACT DOCUMENTS, EXHIBITS, OR ATTACHMENTS ...........................33**

D.1 QUALITY ASSURANCE SURVEILLANCE PLAN.....................................................33
D.2 WAGE DETERMINATIONS ..............................................................................33
D.3 PAST PERFORMANCE QUESTIONNAIRE ..........................................................33

D.4 CONTRACTOR CERTIFICATION .......... 33
D.5 SUBCONTRACTING PLAN .......... 33

**SECTION E - SOLICITATION PROVISIONS .......... 34**

E.1 52.212-1 INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS (OCT 2015) .......... 34
E.2 52.203-98 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS—REPRESENTATION (DEVIATION) (FEB 2015) .......... 38
E.3 52.204-7 SYSTEM FOR AWARD MANAGEMENT (OCT 2016) .......... 39
E.4 52.204-17 OWNERSHIP OR CONTROL OF OFFEROR (JUL 2016) .......... 40
E.5 52.209-7 INFORMATION REGARDING RESPONSIBILITY MATTERS (JUL 2013) .......... 41
E.6 52.212-2 EVALUATION—COMMERCIAL ITEMS (OCT 2014) .......... 41
E.7 52.216-1 TYPE OF CONTRACT (APR 1984) .......... 45
E.8 52.233-2 SERVICE OF PROTEST (SEP 2006) .......... 45
E.9 VAAR 852.209-70 ORGANIZATIONAL CONFLICTS OF INTEREST (JAN 2008) .......... 46
E.10 VAAR 852.233-70 PROTEST CONTENT/ALTERNATIVE DISPUTE RESOLUTION (JAN 2008) .......... 46
E.11 VAAR 852.233-71 ALTERNATE PROTEST PROCEDURE (JAN 1998) .......... 47
E.12 VAAR 852.270-1 REPRESENTATIVES OF CONTRACTING OFFICERS (JAN 2008) 47
E.13 VAAR 852.271-70 NONDISCRIMINATION IN SERVICES PROVIDED TO BENEFICIARIES (JAN 2008) .......... 48
E.14 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS—COMMERCIAL ITEMS (JAN 2017) .......... 48
E.15 52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998) .......... 60

## SECTION B - CONTINUATION OF SF 1449 BLOCKS

### B.1 CONTRACT ADMINISTRATION DATA

(continuation from Standard Form 1449, block 18A.)

**1. Contract Administration**: All contract administration matters will be handled by the following individuals:

a. CONTRACTOR: ________________________________
Title: ________________________________
Address: ________________________________
Telephone: ________________________________
Facsimile: ________________________________
E-mail: ________________________________
Federal Taxpayer ID Number ________________________________
Dun and Bradstreet Number ________________________________

b. GOVERNMENT: Contracting Officer (CO): Yamil O. Rodriguez 36C248
Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)
8875 Hidden River Pkwy, Suite 525
Tampa, FL 33637

Administrative Contracting Officer: Rodney F. Cassidy 36C248
Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)
8875 Hidden River Pkwy, Suite 525
Tampa, FL 33637

**2. CONTRACTOR REMITTANCE ADDRESS**: All payments by the Government to the contractor will be made in accordance with:

[x] 52.232-33, Payment by Electronic Funds Transfer – System for Award Management

[] 52.232-36, Payment by Third Party

**3. INVOICES**: Invoices shall be submitted in arrears:

a. Quarterly []
b. Semi-Annually []
c. Other [X] Monthly

**4. GOVERNMENT INVOICE ADDRESS**: All Invoices from the contractor shall be submitted electronically in accordance with VAAR Clause 852.232-72 to the following email address:

**FACILITY DRIVEN, WILL BE PROVIDED UPON AWARD**

**5. ACKNOWLEDGMENT OF AMENDMENTS**: The offeror acknowledges receipt of amendments to the Solicitation numbered and dated as follows:

| AMENDMENT NUMBER | DATE |
| --- | --- |

6. **REQUEST FOR PROPOSALS:** Offerors must complete and return all information designated in FAR 52.212-1, Instructions to Offerors – Commercial Items, prior to the time specified in block 8 of SF1449 in order to be considered for award. Request for Proposals (RFP) offers for furnishing services identified within the schedule shall be submitted electronically to the Contract Specialist at Rodney.Cassidy@va.gov.

7. **CAUTION**: LATE submissions, Modifications, and Withdrawals: See Provision 52.212-1. All offers are subject to all terms and conditions of this solicitation.

8. **ATTENTION LARGE BUSINESS**: Large Businesses are to submit a Subcontracting Plan, in accordance with Federal Acquisition Regulation (FAR) 52.219-8, Utilization of Small Business Concerns, FAR 52.219-9, Small Business Subcontracting Plan and Veterans Affairs Acquisition Regulation (VAAR) 852.219-9, Veteran Affairs (VA) Small Business Subcontracting Plan Minimum Requirement with their proposal. Refer to Attachment D.5, Subcontracting Plan Model. Goals are recommended and shall be expressed in terms of percentages of total planned dollars. Subcontracting plan is to include a description of the principal types of supplies and services to be subcontracted out and identification of the types planned for subcontracting in the area of Small, Small Disadvantaged, Woman-Owned, Hub-Zone, Service Disabled Veteran and Veteran-Owned Small Business concerns.

   In accordance with the United States Department of Veterans Affairs Office of Small and Disadvantaged Business Utilization (OSDBU) Subcontracting Plan Model the following goals are required for each of the socioeconomic group: Small Business (including Alaska Native Corporations (ANC) and Indian Tribes) 17.7%, Service Disabled Veteran-Owned Small Business 3.0%, Veteran-Owned Small Business 5.0%, Small Disadvantaged Business (including ANC and Indian Tribes) 5.0%, Women-Owned Small Business 5.0% and HUBzone Small Business 3.0%.

   The offeror agrees, if awarded a contract, to use service-disabled veteran-owned small businesses or veteran-owned small businesses proposed as subcontractors in accordance with 852.215-70 included herein, eligible Service-Disabled Veteran-Owned and Veteran-Owned Small Business Evaluation Factors, or to substitute one (1) or more service-disabled veteran owned small businesses or veteran-owned small businesses for subcontract work of the same or similar value.

9. **SUBCONTRACTING COMMITMENTS--MONITORING AND COMPLIANCE (JUN 2011)**: This solicitation includes VAAR 852.215-70, Service-Disabled Veteran-Owned and Veteran-Owned Small Business Evaluation Factors, and VAAR 852.215-71, Evaluation Factor Commitments. Accordingly, any contract resulting from this solicitation will include these clauses. The contractor is advised in performing contract administration functions, the CO may use the services of a support contractor(s) to assist in assessing contractor compliance with the subcontracting commitments incorporated into the contract. To that end, the support contractor(s) may require access to the contractor's business records or other proprietary data to review such business records regarding contract compliance with this requirement. All support contractors conducting this review on behalf of VA will be required to sign an “Information Protection and Non-Disclosure and Disclosure of Conflicts of Interest Agreement” to ensure the contractor's business records or other proprietary data reviewed or obtained in the course of assisting the CO in assessing the contractor for compliance are protected to ensure information or data is not improperly disclosed or other impropriety occurs. Furthermore, if VA determines any services the support contractor(s) will perform in assessing compliance are advisory and assistance services as defined in FAR 2.101, Definitions, the support

contractor(s) must also enter into an agreement with the contractor to protect proprietary information as required by FAR 9.505-4, obtaining access to proprietary information, paragraph (b). The contractor is required to cooperate fully and make available any records as may be required to enable the CO to assess the contractor compliance with the subcontracting commitments.

10. **SUBCONTRACTING PLAN—MONITORING AND COMPLIANCE (JUN 2011):** This solicitation includes FAR 52.219-9, Small Business Subcontracting Plan, and VAAR 852.219-9, VA Small Business Subcontracting Plan Minimum Requirement. Accordingly, any contract resulting from this solicitation will include these clauses. The contractor is advised in performing contract administration functions, the CO may use the services of a support contractor(s) to assist in assessing the contractor's compliance with the plan, including reviewing the contractor's accomplishments in achieving the subcontracting goals in the plan. To that end, the support contractor(s) may require access to the contractor's business records or other proprietary data to review such business records regarding the contractor's compliance with this requirement. All support contractors conducting this review on behalf of VA will be required to sign an "Information Protection and Non-Disclosure and Disclosure of Conflicts of Interest Agreement" to ensure the contractor's business records or other proprietary data reviewed or obtained in the course of assisting the CO in assessing the contractor for compliance are protected to ensure information or data is not improperly disclosed or other impropriety occurs. Furthermore, if VA determines any services the support contractor(s) will perform in assessing compliance are advisory and assistance services as defined in FAR 2.101, Definitions, the support contractor(s) must also enter into an agreement with the contractor to protect proprietary information as required by FAR 9.505-4, obtaining access to proprietary information, paragraph (b). The contractor is required to cooperate fully and make available any records as may be required to enable the CO to assess the contractor compliance with the subcontracting plan.

11. **RATE DETERMINATION**: The per diem rate is established by the current Medicaid rate for Medicaid approved Adult Day Health cares plus a fair market amount (percentage) to cover the cost of supplies, services, and equipment above that provided under Medicaid established by the local state Medicaid agency (SMA). Rates established after the effective date of this contract will constitute a modification to the contract.

    VA will use Medicaid rates for care.

**B.2 PRICE/COST SCHEDULE**

The offeror shall furnish all personnel to provide services necessary to provide Off-Site Community Adult Day Care services to eligible beneficiaries within the catchment areas of the following VAMCs: Bay Pines, NF/SG, Miami, Orlando, San Juan, Tampa, and West Palm Beach. All services shall be performed at the Offeror's facility. The Offeror shall provide professional and technical services to include materials, supplies, equipment and qualified supervision specified herein.

**Contract type:** Fixed Price, Indefinite Quantity Contract, with an Economic Price Adjustment (EPA).

**Place of Performance**: Services shall be provided offsite at the Offeror's Facility.

**Period of Performance**: The Award Date for one (1) base year with four (4) year options to renew to be exercised at the sole discretion of the Government.

**Task Order Procedures**: Task order will be issued to fund the contract and as needed to modify increases or decreases of funding as necessary. Task orders will not be issued per patient. The task order will contain the required reference numbers for billing; such as contract number and order.

**Minimum and Maximum Guaranteed**:  This contract includes a guaranteed minimum of a room for one (1) veteran for one (1) day for the duration of the contract. Moreover, the contract maximum will be determined upon award.

**INVOICES**:  Invoices shall be submitted promptly to the authorizing facility by the 15th calendar day following the end of the month in which services were rendered.  All invoices must include the full name and address of the Adult Day Health Care and shall reflect the patient's name, social security number, number of days billed, level of care category, and per diem rate. Failure to include this information may result in delayed payments.

**MEDICARE/MEDICAID STANDARDS**:  The contractor is required to follow Medicare/Medicaid standards for all VA placements, except Life Safety. Medicare/Medicaid clinical and program standards are found in 42 CFR 483.

**AUTHORIZATION**:  Authorizations for Adult Day Health Care will be accomplished on VA Form 10-7078, Authorization and Invoice for Medical and Hospital Services. Each authorization validity period will be from the initial effective date to disposition.  Any extension to the original authorization validity period, regardless of the number of days, requires a new VA Form 10-7078.

**ANCILLARY COSTS**:  Ancillary costs are pre-approved costs for supplies or services not identified as included in the all-inclusive rate or any other pre- authorized rate or schedule or payment for items or services provided under this agreement. Ancillary costs such as medications, and special equipment, may not be added to any invoice without written permission of the VA medical center placing the veteran.  If permission is received, the Adult Day Health Care must also submit the physician's order for the medication/supply, the dispensing log, the supplier and the cost charged by the supplier to the Adult Day Health Care, and what the Adult Day Health Care is charging the VA.

**ECONOMIC PRICE ADJUSTMENT**:  This provision does not apply to ancillary services that may be added or deleted from the agreement.

The per diem rate(s) will apply throughout the term of this contract, including extension period(s).  The rate(s) may be adjusted only to reflect a change in a Medicaid rate as authorized by the State Medicaid Agency (SMA).  Normally, this will be on an annual basis.  The negotiated percentage above the Medicaid rate, to cover the all-inclusive nature of the contract, will not be renegotiated; but will be applied and added to the new Medicaid rate for the adjusted per diem rate for each level of care item. This clause does not apply to rates for non-Medicaid Adult Day Health Care.  In this regard, new rates will be negotiated requiring a modification to the contract. Each per diem price adjustment under this clause is subject to the following limitations:

Any adjustment shall be limited to the effect of increases or decreases in the approved State Medicaid Agency (SMA's) patient care components within the affected Medicaid groups.

Adjustments will occur no more frequently than those issued by the State Medicaid Agency.

No adjustments will be made until the Contracting Officer receives a State Medicaid Agency authenticated copy of the new rate, signed and dated in a conspicuous area at the top right of the document by the authorized Adult Day Health Care official.  Within ten days after this occurs, the Contracting Officer will execute an approval signature and date at the approximate location of the Adult Day Health Care official's signature, the action of which will serve as the effective date of the adjusted

rate. A copy of the fully executed document will be sent to the Adult Day Health Care official for record keeping purposes.

**PAYMENTS**: Payments made by VA under this contract constitute the total cost of Adult Day Health Care. No additional charges will be billed to Medicare Part B, the beneficiary or his/her family, either by the Adult Day Health Care or any third part furnishing services or supplies required for such care, unless and until specific prior authorization in writing is obtained from the VA facility authorizing placement. The contractor will not solicit contributions, donations, or gifts from patients or family members.

**TERMINATION OF SERVICES**: VA reserves the right to remove any or all VA patients from the Adult Day Health Care at any time, when it is determined to be in the best interest of VA or the patients.

**Pricing Instructions**: **Pricing is based on Medicaid rates. A copy of the Medicaid rate for the Offeror's facility must be provided on a State's letterhead.**

**Pricing Instructions**: **Pricing is based on Medicaid rates. A copy of the Medicaid rate for the Offeror's facility must be provided on a State's letterhead.**

**Note**: The Government reserves the right to send patients to facilities other than the Offeror should the Veterans Affairs Medical Center (VAMC) physician determines it to be in the best interest of the patient. Per procedure contracts for services provided at the contractor's place of business shall be based on Medicaid plus rates, and adjusted to ensure that the VAMC only pays for services provided. The Government reserves the right to send patients to facilities other than the Offeror should the VAMC physician determines it to be in the best interest of the patient. Per procedure contracts for services provided at the contractor's place of business shall be based on Medicaid rates, and adjusted to ensure that the VAMC only pays for services provided.

VA acknowledges that, depending on the availability of resources at specific Indefinite-Delivery, Indefinite-Quantity (IDIQ) holder facilities at specific times, acceptance of a referral may be commercially impracticable for the IDIQ holder. In that event, the IDIQ holder may decline to accept an authorization. If the IDIQ holder has determined that space is not available and will not accept the Veteran, the Community Adult Day Health Care program personnel will seek another IDIQ contract and an authorization will be issued when a match is found. Designated Adult Day Health Care (ADCHS) program personnel will issue written authorizations for Veterans to the IDIQ holder. In accordance with FAR FAR 16.505(b)(2)(i)(A) or FAR 16.505(b)(2)(i)(B), VA has determined it is in the best interest of the Veteran to place the individual order without further competition because the need for these services is sometimes urgent, and providing the opportunity to all IDIQ holders or other vendors would result in unacceptable delays in fulfilling that need. Location primarily will be selected based on the Veteran's needs and proximity to the Veteran's home.

**Post Award Conference**: The Contracting Officer (CO) will schedule a post award conference for contract orientation purposes.

## B.3 PERFORMANCE WORK STATEMENT

### A. Overview

1. Authority: Title 38 United States Code (U.S.C.) 1720, Transfers for nursing home care; adult day health care and Title 38 Code of Federal Regulations (CFR), Section 17.38 (a)(1)(xi)(B). Sharing Authority and Federal Acquisition Regulation (FAR) part 15 Contracting By Negotiation.

**2. Policy/Handbook: VHA DIRECTIVE 1140.11,**
http://www.bing.com/search?q=VHA+directive+1140.00&src=IEsearchBox&FORM=IENTTR&conversationid=
**VHAHandbook1141.03**
http://www.bing.com/search?q=VHA%20directive%201141.03&qs=n&form=QBRE&sp=-1&pq=vha%20directive%201141.03&sc=1-21&sk=&cvid=D7246B99ED7A46149CE4AAF1BF24A8EB

**3. Federal Acquisition Regulation (FAR) – Indefinite Delivery Contract (IDC).** In accordance with FAR 16.504, Indefinite-Quantity Contracts, this is an IDC for the period. The award will be for one (1) base year with four (4)-one (1) year options. A binding contract is formed, in accordance with the terms and conditions of this IDC, when the Department of Veterans Affairs (VA) agrees to place a patient in the Adult Day Health Care (ADHC) and the ADHC agrees to accept the patient. Upon acceptance by the Contractor of beneficiaries of VA, all terms and clauses of this IDC shall apply during such time as VA patient remains in that ADC at the expense of VA.

**2. Services Rendered at VA Per Diem Rates.** Upon acceptance of a VA patient by the ADHC, if and when requested by the VA Contracting Officer or authorized representative, the Contractor shall furnish all supplies and services herein described, at the hourly rates. VA is obligated only to the extent authorized placement of patients is made in accordance with this IDC.

**Background/Introduction.** The Adult Day Health Care (ADHC) program is a key component of the Veterans Health Administration (VHA) continuum of care. The Contractor agrees to provide in accordance with the terms and conditions stated herein to the U.S. Department of Veterans Affairs Health Care System, in Florida at the prices specified in the section titled Schedule of Items of this IDC. Facilities in the ADHC program shall cooperate with VA staff in referral of appropriate veterans for care and accept veterans of which they have the capability/capacity to care. The term, "facilities," shall include but not be limited to rooms, wards, sections, eating areas, drinking fountains, entrances, and other like areas. VA shall have the right to inspect the ADHC and all appurtenances by authorized VA representative(s) to ensure that acceptable standards are maintained and that the necessary care to maintain the well-being of the patient is rendered.

**B. Requirements**

**1. General.** Adult Day Health Care facilities in the ADHC program shall ensure that care meets the health needs and promotes the maximum well-being of VA patients. ADHC care will be furnished to ensure the total medical, nursing, and psychosocial needs of VA beneficiaries. VA developed quality of care standards utilizing Agency for Health Care Administration (AHCA) inspection criteria. See VHA Handbook 1143.2, "VHA Adult Day Health Care Oversight Procedures (June 4, 2004) a copy of which is available at: http://www.va.gov/vhapublications/publications.cfm?pub=2. VA often has a particular need for specialty care services in the ADHC program. The VA requires ADHCs to have capacity to ensure their ability to take referrals when requested. The ADHC also must be able to accept VA referrals in a timely fashion (ideally within 24 hours of request). Duly authorized representatives of VA will provide quality oversight visits to veterans placed to assure continuity of care. These visits do not substitute nor relieve the ADHC in any way of the responsibility for the daily care and medical treatment of the veteran. The hourly rate(s) established in this IDC will include the cost of care and transport to and from the ADHC, if available. Full attention shall be given to motivating and educating patients to achieve and maintain independence in the activities of daily living. Every effort shall be made to keep patients ambulatory and to achieve an optimal level of self-care.

2. **Termination of Services.** VA reserves the right to remove any or all VA patients from the ADHC at any time when it is determined to be in the best interest of VA or the patients without additional costs to the Government.

**3**. **VA Authorizations.** Authorization for ADHC care will be submitted on VA Form 10-7078, "Authorization and Invoice for Medical and Hospital Services." Each authorization validity period will be noted on the VA Form 10-7078 with a beginning and end date. Any extension to the original authorization validity period, regardless of the number of days, requires a new VA Form 10-7078.

**4**. **Primary Medical Coverage.** The provider is responsible for general medical care, urgent Evaluation and intervention.

**5. Emergency Care; Financial Responsibility; Advanced Directives.** In emergencies, ADHC staff will utilize the 911 local emergency systems as for any patient and notify the VA ADHC coordinator. Advance directives or living wills shall be adhered to according to ADHC physician's orders. When private hospitalization or emergency services are required, the patient, spouse, financial guardian or insurer is financially responsible. This includes the cost of necessary transportation for such care..

**6. HIPAA Compliance.** HIPAA compliance is required. The Contractor must adhere to the provisions of Public Law 104-191, Health Insurance Portability and Accountability Act (HIPAA) of 1996 and the National Standards to Protect the Privacy and Security of Protected Health Information (PHI). As required by HIPAA, the Department of Health and Human Services (HHS) has promulgated rules governing the security and use and disclosure of protected health information by covered entities, including the Department of Veterans Affairs (VA). In accordance with HIPAA, the Contractor may be required to enter into a Business Associate Agreement (BAA) with VA, but VACO has recognized ADHC Facilities as an entity that does not require a BAA as long as they are conducting health care on VA's behalf. The ADHC care program qualifies as a medical service, so no BAA is required.

**7. State Licensure; Access to ADHC Quality of Care Reports (QASP Indicator #1).** The ADHC must maintain a current and unrestricted state license to operate. Changes in the status of the licensure will be immediately reported to the VA Hospital ADHC Program. VA will monitor the professional care and administrative management of services provided to VA beneficiaries under this IDC, through one or any combination of the following methods: reviews of State agencies reports; on-site inspection of the ADHC by VA staff; and/or on-site monitoring of VA patients. The ADHC shall provide VA with copies of all State agency reports when requested, and cooperate fully with VA's quality improvement or quality assurance program functions relating to this IDC, including VA's on-site inspection and monitoring. The VA Contracting Officer shall make all final determinations as to the Contractor's reasonable cooperation with VA and compliance with these requirements.

**8**. **Corrective Action Plan (QASP Indicator #2).** The ADHC will cooperate with timely development of Corrective Action Plans (CAPs) related to identified deficiencies and related to State, Federal or VA surveys. The ADHC will develop in the time period specified by VA timely and appropriate CAPs for VA surveys or investigation of complaints related to quality of care or sentinel events in accordance with Agency for Health Care Administration (AHCA) guidelines, however, not to exceed 30 days. The ADHC will also supply related documents or data as specified by VA. The CAPs will include but are not limited to the following criteria and shall:

a. Contain elements detailing how the ADHC will correct the deficiency as it relates to the individual;
b. Indicate how the ADHC will act to protect residents in similar situations;
c. Include the measures the ADHC will take or systems that will be altered to ensure that the problem will not recur. The ADHC must look at the system and determine if a change to the existing system will work, if a new system is necessary, or if a system does not exist and must be developed;
d. Indicate how the ADHC plans to monitor performance to make sure that solutions are permanent. The ADHC must develop a quality assurance tool for ensuring that

correction is achieved and sustained.  This tool must be implemented.  Failure to implement a quality assurance tool to sustain compliance will reflect that the ADC has an ineffective quality assurance system; and

e.   Provide dates when corrective action will be completed.

**9.  Life Safety Code.** The ADHC's building shall conform to the most recent standards of the Life Safety Code (National Fire Protection Association Standard #101) in effect on the date of the IDC award and compliance with all applicable Federal, State and local regulations. The administrator of the ADHC is required to notify the VA Contracting Officer in writing at least thirty (30) calendar days prior to any planned facility changes that could impact the Life Safety Code and other safety features of the facility which were in existence at the time this IDC became effective. The VA Contracting Officer will notify the VA Safety Manager responsible for the Life Safety Code inspection of the ADHC and he/she will review (inspect the facility if required) the proposed changes and provide necessary approval or disapproval of the ADHC to house veterans during and/or after the proposed changes.  These changes may include but are not limited to:

a. **Interior changes requiring VA approval.** Some examples of facility changes that require the VA Contracting Officer notification are as follows:   interior finish, corridor partitions/walls, linen or trash chutes, exits, emergency lighting, fire alarm systems, automatic sprinklers, smoke barrier walls or doors, oxygen systems, compressed gas storage, HVAC, electrical and fuel gas systems.

b. **Natural disasters.**  In the event of a natural disaster (flood, tornado, etc.), the ADHC shall communicate all action plans to VA.  The action plans will at a minimum identify a temporary operational emergency service plan.

c. **Major construction; additions; and renovations.** Major construction including building additions or other renovations which may affect physical plant integrity; SHALL MEET latest NFPA 101 Life/Safety Code requirements as well as any additional VA ADHC construction standards in place at the time of renovation or alteration.

**10.  Acceptable Safety and Sanitation Practices.**  Acceptable safety and sanitation practices shall be observed throughout the facility.  The ADHC will address employee and patient safety practices through staff orientation, training and adherence to related policy or procedures to provide a safe and clean environment.

**11.  Hospitalization; Notification of Death of Veterans.**  In the event of a death or injury of any veteran, the Contractor agrees to notify VA immediately.

**12. Reportable Events (QASP Indicator #4).**  VA requires ADHCs to report to the ADHC Coordinator at VA any of the following events within 24-hours or immediately the first business day after a weekend or holiday:

1) Sentinel events;
2) When there is a change of ownership of the ADHC;
3) When there is a change of ADHC administrator or Director of Nursing/Director of Nursing Service;
4) Substantiated allegations of mistreatment, neglect, abuse or misappropriation of any resident or property;
5) Elopements of any residents pursuant to state regulations;
6) Infectious outbreaks;

7) Resident to resident or resident to staff altercations resulting in any injury that is other than minor;
8) Copies of annual surveys or substantiated complaint investigations conducted by a State oversight agency; and
9) Adverse events.

Reporting shall include date of occurrence and patient disposition and outcome.

1) A fall resulting in death or injury;
2) Elopement resulting in a missing patient;
3) Patient abuse confirmed or under suspicion;
4) A medication error resulting in patient illness or injury;
5) Death related to an unconfirmed or suspicious cause.

When an adverse event occurs involving an ADHC Veteran which is not determined to be a Sentinel Event but that the State requires that the occurrence be reported to the State, such event is also to be reported to VA's ADHC program office.  Some adverse events, such as minor medication errors without catastrophic outcomes, are managed by the ADHC in the context of their quality improvement programs.

**13.  VA Actions Regarding Serious Quality of Care Deficiencies.**  In cases of serious deficiencies affecting the health or safety of veterans or in cases of continued uncorrected deficiencies, VA will take one or more of the following actions in accordance with the terms and clauses of the IDC and applicable procurement regulations:

a.   Increase VA staffing monitoring until the State survey agency clears the deficiency;
b.   Suspend placement of veterans in the ADHC;
c.   Remove or transfer veterans under the IDC from the subject ADHC;
d.   Not renew the IDC; and/or
e.   Terminate the IDC.

**14.  VA Staff Access to ADHC Records (QASP Indicator #5).**  All medical records concerning the veteran's care in the ADHC will be readily accessible to VA.  Upon discharge or the death of a patient, medical records will be retained by the ADHC for a period of at least five (5) years following termination of care.  Patient records will be maintained in conformance with the Privacy Act of 1974 (5 U.S.C. § 552a).  A medical record shall be maintained for each patient, which includes at least the following:

a.   **VAHCS Referral Package to the ADHC:**

1.   Copy of agency application History & Physical information, Medication List;
2.   Copy of Authorization Agreement (VAF 10-7078).

b.   **Patient Clinical Record:**  The ADHC must maintain clinical records on each veteran in accordance with accepted professional standards and practice. The clinical record must be: complete, accurately documented, readily accessible, systematically organized, and legible. Clinical records must contain at a minimum:

1.   Sufficient information to identify the resident;
2.   A record of the veteran's assessments, including those assessments performed by services under the IDC with the ADHC;
3.   The plan of care and services including medication administration, provided by ADHC staff and services provided under the IDC with the ADHC;
4.   Interdisciplinary progress notes to include effect of care provided, veterans' response to treatment, change in condition, and changes in treatment;

     5. Allergies;
6. Person to contact in an emergency situation;
7. Name of attending medical practitioner; and
8. Advanced directives if available.

c. **Clinical Record Safeguards:** The ADHC must safeguard clinical record information against loss, destruction, or unauthorized use. If the ADHC maintains a veteran's record by computer, electronic signatures are acceptable. If attestation is done on computer records, safeguards to prevent unauthorized access and to provide for reconstruction of information must be in place.

**15. VA Health Care System Consultation/Resources.**

(a) Transportation: Will be provided by the ADHC if available in the center's area and cost will be covered by the hourly rate paid by the VA. Payments begin when patient gets to ADHC.

(a)(i) Included areas are as followed: VAMCs: Bay Pines 10000 Bay Pines Blvd St Petersburg, FL 33708, NF/SG 1601 SW Archer Rd Gainesville, FL 32608, Miami 1201 NW 16th St. Miami FL 33125, Orlando 5201 Raymond St. Orlando FL,32803, San Juan 10 Calle Casia San Juan PR 00921, Tampa 13000 Bruce B. Downs Blvd Tampa, FL 33612, and West Palm Beach 7305 N Military Trail West Palm Beach, FL 33410

**16. Charitable Contributions.** The ADHC will not solicit contributions, donations, or gifts from patients or family members. Note: Established charitable fundraising activities of an ADHC fall outside the scope of this language.

**17. ADC Billing (QASP Indicator #6).** Invoices for care and ancillary services shall be submitted promptly to the ADHC COR by the 15th calendar day following the end of the month in which services were rendered. The ADHC will promptly notify the VA ADHC Coordinator regarding any change in Veteran status: discharge, transfer, against medical advice (AMA), hospitalization, death and/or any changes in payer source and any ability to complete timely billing.

**18. Minimum Quantities; VA Payment.** It is impossible to determine the exact or estimated amount, which will be expended under this IDC. No obligation will be incurred by VA under this IDC, until authorizations are issued for ADHC attendance. VA agrees to make payment on a timely basis for services rendered in accordance with such authorizations upon receipt of proper invoices submitted by the ADHC as outlined in this IDC. VA will make payment for the hours attended by a recipient.

**19. VA Payments.** Payments made by VA under any contract pursuant to this IDC, constitute the total cost of ADHC. No additional charges will be billed to Medicare, Medicaid, or private insurance, the beneficiary or his/her family, either by the ADHC or any third party furnishing services or supplies required for such care, unless and until specific prior authorization in writing is obtained from the VA facility authorizing placement. The patient, family and any other entitlement programs (e.g., Medicare, Medicaid, etc.) will not be billed for uncovered services or costs during the VA contract period. This constitutes double-billing and Federal fraud.

Department of Veterans Affairs
Attn: Social Work Service (122) ADCHS
Address: FACILITY DRIVEN, WILL BE PROVIDED UPON AWARD

END PERFORMANCE WORK STATEMENT

**SECTION C - CONTRACT CLAUSES**

**C.1 52.212-4 CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAY 2015)**

(a) *Inspection/Acceptance.* The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or performance of nonconforming services at no increase in contract price. If repair/replacement or performance will not correct the defects or is not possible, the Government may seek an equitable price reduction or adequate consideration for acceptance of nonconforming supplies or services.  The Government must exercise its post-acceptance rights—

(1) Within a reasonable time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) *Assignment.* The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C. 3727). However, when a third party makes payment (e.g., use of the Government wide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) *Changes.* Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) Disputes. This contract is subject to 41 U.S.C. chapter 71, Contract Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) *Definitions.* The clause at FAR 52.202-1, Definitions, is incorporated herein by reference.

(f) *Excusable delays.* The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) Invoice.

(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include—

(i) Name and address of the Contractor;

(ii) Invoice date and number;

(iii) Contract number, contract line item number and, if applicable, the order number;

(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;

(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

(vi) Terms of any discount for prompt payment offered;

(vii) Name and address of official to whom payment is to be sent;

(viii) Name, title, and phone number of person to notify in event of defective invoice; and

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

(x) Electronic funds transfer (EFT) banking information.

(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer—System for Award Management, or 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management), or applicable agency procedures.

(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

(h) *Patent indemnity*. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) Payment.—

(1) *Items accepted.* Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.

(2) *Prompt payment.* The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR part 1315.

(3) *Electronic Funds Transfer (EFT).* If the Government makes payment by EFT, see 52.212-5(b) for the appropriate EFT clause.

(4) *Discount.* In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to

have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.

(5) *Overpayments.* If the Contractor becomes aware of a duplicate contract financing or invoice payment or that the Government has otherwise overpaid on a contract financing or invoice payment, the Contractor shall—

(i) Remit the overpayment amount to the payment office cited in the contract along with a description of the overpayment including the—

(A) Circumstances of the overpayment (e.g., duplicate payment, erroneous payment, liquidation errors, date(s) of overpayment);

(B) Affected contract number and delivery order number, if applicable;

(C) Affected contract line item or subline item, if applicable; and

(D) Contractor point of contact.

(ii) Provide a copy of the remittance and supporting documentation to the Contracting Officer.

(6) *Interest.*

(i) All amounts that become payable by the Contractor to the Government under this contract shall bear simple interest from the date due until paid unless paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in 41 U.S.C. 7109, which is applicable to the period in which the amount becomes due, as provided in (i)(6)(v) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(ii) The Government may issue a demand for payment to the Contractor upon finding a debt is due under the contract.

(iii) *Final decisions.* The Contracting Officer will issue a final decision as required by 33.211 if—

(A) The Contracting Officer and the Contractor are unable to reach agreement on the existence or amount of a debt within 30 days;

(B) The Contractor fails to liquidate a debt previously demanded by the Contracting Officer within the timeline specified in the demand for payment unless the amounts were not repaid because the Contractor has requested an installment payment agreement; or

(C) The Contractor requests a deferment of collection on a debt previously demanded by the Contracting Officer (see 32.607-2).

(iv) If a demand for payment was previously issued for the debt, the demand for payment included in the final decision shall identify the same due date as the original demand for payment.

(v) Amounts shall be due at the earliest of the following dates:

(A) The date fixed under this contract.

   (B) The date of the first written demand for payment, including any demand for payment resulting from a default termination.

(vi) The interest charge shall be computed for the actual number of calendar days involved beginning on the due date and ending on—

(A) The date on which the designated office receives payment from the Contractor;

(B) The date of issuance of a Government check to the Contractor from which an amount otherwise payable has been withheld as a credit against the contract debt; or

(C) The date on which an amount withheld and applied to the contract debt would otherwise have become payable to the Contractor.

(vii) The interest charge made under this clause may be reduced under the procedures prescribed in 32.608-2 of the Federal Acquisition Regulation in effect on the date of this contract.

(j) *Risk of loss.* Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

(1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or

(2) Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

(k) *Taxes.* The contract price includes all applicable Federal, State, and local taxes and duties.

(l) *Termination for the Government's convenience.* The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

(m) *Termination for cause.* The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(n) *Title.* Unless specified elsewhere in this contract, title to items furnished under this contract shall pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

(o) *Warranty.* The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(p) *Limitation of liability.* Except as otherwise provided by an express warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

(q) *Other compliances.* The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

(r) *Compliance with laws unique to Government contracts.* The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. chapter 37, Contract Work Hours and Safety Standards; 41 U.S.C. chapter 87, Kickbacks; 41 U.S.C. 4712 and 10 U.S.C. 2409 relating to whistleblower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. chapter 21 relating to procurement integrity.

(s) *Order of precedence.* Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order:

(1) The schedule of supplies/services.

(2) The Assignments, Disputes, Payments, Invoice, Other Compliances, Compliance with Laws Unique to Government Contracts, and Unauthorized Obligations paragraphs of this clause;

(3) The clause at 52.212-5.

(4) Addenda to this solicitation or contract, including any license agreements for computer software.

(5) Solicitation provisions if this is a solicitation.

(6) Other paragraphs of this clause.

(7) The Standard Form 1449.

(8) Other documents, exhibits, and attachments

(9) The specification.

(t) *System for Award Management (SAM).*

(1) Unless exempted by an addendum to this contract, the Contractor is responsible during performance and through final payment of any contract for the accuracy and completeness of the data within the SAM database, and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the SAM database after the initial registration, the Contractor is required to review and update on an annual basis from the date of initial registration or subsequent updates its information in the SAM database to ensure it is current, accurate and complete. Updating information in the SAM does not alter the terms and conditions of this contract and is not a substitute for a properly executed contractual document.

(2)(i) If a Contractor has legally changed its business name, "doing business as" name, or division name (whichever is shown on the contract), or has transferred the assets used in performing the contract,

but has not completed the necessary requirements regarding novation and change-of-name agreements in FAR subpart 42.12, the Contractor shall provide the responsible Contracting Officer a minimum of one business day's written notification of its intention to (A) change the name in the SAM database; (B) comply with the requirements of subpart 42.12; and (C) agree in writing to the timeline and procedures specified by the responsible Contracting Officer. The Contractor must provide with the notification sufficient documentation to support the legally changed name.

(ii) If the Contractor fails to comply with the requirements of paragraph (t)(2)(i) of this clause, or fails to perform the agreement at paragraph (t)(2)(i)(C) of this clause, and, in the absence of a properly executed novation or change-of-name agreement, the SAM information that shows the Contractor to be other than the Contractor indicated in the contract will be considered to be incorrect information within the meaning of the "Suspension of Payment" paragraph of the electronic funds transfer (EFT) clause of this contract.

(3) The Contractor shall not change the name or address for EFT payments or manual payments, as appropriate, in the SAM record to reflect an assignee for the purpose of assignment of claims (see Subpart 32.8, Assignment of Claims). Assignees shall be separately registered in the SAM database. Information provided to the Contractor's SAM record that indicates payments, including those made by EFT, to an ultimate recipient other than that Contractor will be considered to be incorrect information within the meaning of the "Suspension of payment" paragraph of the EFT clause of this contract.

(4) Offerors and Contractors may obtain information on registration and annual confirmation requirements via SAM accessed through https://www.acquisition.gov.

(u) *Unauthorized Obligations.*

(1) Except as stated in paragraph (u)(2) of this clause, when any supply or service acquired under this contract is subject to any End User License Agreement (EULA), Terms of Service (TOS), or similar legal instrument or agreement, that includes any clause requiring the Government to indemnify the Contractor or any person or entity for damages, costs, fees, or any other loss or liability that would create an Anti-Deficiency Act violation (31 U.S.C. 1341), the following shall govern:

(i) Any such clause is unenforceable against the Government.

(ii) Neither the Government nor any Government authorized end user shall be deemed to have agreed to such clause by virtue of it appearing in the EULA, TOS, or similar legal instrument or agreement. If the EULA, TOS, or similar legal instrument or agreement is invoked through an "I agree" click box or other comparable mechanism (e.g., "click-wrap" or "browse-wrap" agreements), execution does not bind the Government or any Government authorized end user to such clause.

(iii) Any such clause is deemed to be stricken from the EULA, TOS, or similar legal instrument or agreement.

(2) Paragraph (u)(1) of this clause does not apply to indemnification by the Government that is expressly authorized by statute and specifically authorized under applicable agency regulations and procedures.

(v) *Incorporation by reference*. The Contractor's representations and certifications, including those completed electronically via the System for Award Management (SAM), are incorporated by reference into the contract.

(End of Clause)

ADDENDUM to FAR 52.212-4 CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS

Clauses that are incorporated by reference (by Citation Number, Title, and Date), have the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

The following clauses are incorporated into 52.212-4 as an addendum to this contract:

**C.2 52.203-99 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS (DEVIATION) (FEB 2015)**

(a) The Contractor shall not require employees or contractors seeking to report fraud, waste, or abuse to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

(b) The contractor shall notify employees that the prohibitions and restrictions of any internal confidentiality agreements covered by this clause are no longer in effect.

(c) The prohibition in paragraph (a) of this clause does not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

(d)(1) In accordance with section 743 of Division E, Title VII, of the Consolidated and Further Continuing Resolution Appropriations Act, 2015 (Pub. L. 113-235), use of funds appropriated (or otherwise made available) under that or any other Act may be prohibited, if the Government determines that the Contractor is not in compliance with the provisions of this clause.

(2) The Government may seek any available remedies in the event the contractor fails to comply with the provisions of this clause.
(End of Clause)

**C.3 52.209-5 REPRESENTATION BY CORPORATIONS REGARDING AN UNPAID TAX LIABILITY OR A FELONY CONVICTION UNDER ANY FEDERAL LAW (DEVIATION)(MAR 2012)**

(a) In accordance with Division H, sections 8124 and 8125 of P.L. 112-74 and sections 738 and 739 of P.L. 112-55 none of the funds made available by either Act may be used to enter into a contract with any corporation that—

(1) Has an unpaid federal tax liability, unless the agency has considered suspension or debarment of the corporation and the Suspension and Debarment Official has made a determination that this action is not necessary to protect the interests of the Government.

(2) Has a felony criminal violation under any Federal or State law within the preceding 24 months, unless the agency has considered suspension or debarment of the corporation and Suspension and

Debarment Official has made a determination that this action is not necessary to protect the interests of the Government.

(b) The Offeror represents that—

(1) The offeror does [ ] does not [ ] have any unpaid Federal tax liability that has been assessed and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability.

(2) The offeror, its officers or agents acting on its behalf have [ ] have not [ ] been convicted of a felony criminal violation under a Federal or State law within the preceding 24 months.

(End of Provision)

**C.4 52.216-18 ORDERING (OCT 1995)**

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the end of the effective period.
(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.
(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

(End of Clause)

**C.5 52.216-19 ORDER LIMITATIONS (OCT 1995)**

(a) *Minimum order.* When the Government requires supplies or services covered by this contract in an amount of less than one (1) patient, the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.
(b) *Maximum order.* The Contractor is not obligated to honor—
(1) Any order for a single item more than fifty (50) patients;
(2) Any order for a combination of items more than fifty (50) patients; or
(3) A series of orders from the same ordering office within five (5) days that together call for quantities exceeding the limitation in paragraph (b)(1) or (2) of this section.
(c) If this is a requirements contract (i.e., includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) of this section.
(d) Notwithstanding paragraphs (b) and (c) of this section, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within one (1) days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

(End of Clause)

**C.6 52.216-22 INDEFINITE QUANTITY (OCT 1995)**

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.
(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the

"maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after the end of the completion period..

(End of Clause)

**C.7 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)**

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 15 days.

(End of Clause)

**C.8 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)**

(a) The Government may extend the term of this contract by written notice to the Contractor within 15 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed five (5) years.

(End of Clause)

**C.9 52.232-19 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR (APR 1984)**

Funds are not presently available for performance under this contract beyond the fiscal year, September 30th. The Government's obligation for performance of this contract beyond that date is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise for performance under this contract beyond the fiscal year, September 30th, until funds are made available to the Contracting Officer for performance and until the Contractor receives notice of availability, to be confirmed in writing by the Contracting Officer.

(End of Clause)

**C.10 VAAR 852.203-70 COMMERCIAL ADVERTISING (JAN 2008)**

The bidder or offeror agrees that if a contract is awarded to him/her, as a result of this solicitation, he/she will not advertise the award of the contract in his/her commercial advertising in such a manner as to state or imply that the Department of Veterans Affairs endorses a product, project or commercial line of endeavor.

(End of Clause)

**C.11 VAAR 852.203-71 DISPLAY OF DEPARTMENT OF VETERAN AFFAIRS HOTLINE POSTER (DEC 1992)**

(a) Except as provided in paragraph (c) below, the Contractor shall display prominently, in common work areas within business segments performing work under VA contracts, Department of Veterans Affairs Hotline posters prepared by the VA Office of Inspector General.
(b) Department of Veterans Affairs Hotline posters may be obtained from the VA Office of Inspector General (53E), P.O. Box 34647, Washington, DC 20043-4647.
(c) The Contractor need not comply with paragraph (a) above if the Contractor has established a mechanism, such as a hotline, by which employees may report suspected instances of improper conduct, and instructions that encourage employees to make such reports.

(End of Clause)

**C.12 VAAR 852.215-70 SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (Jul 2016)**

(a) In an effort to achieve socioeconomic small business goals, depending on the evaluation factors included in the solicitation, VA shall evaluate offerors based on their service-disabled veteran-owned or veteran-owned small business status and their proposed use of eligible service-disabled veteran-owned small businesses and veteran-owned small businesses as subcontractors.

(b) Eligible service-disabled veteran-owned offerors will receive full credit, and offerors qualifying as veteran-owned small businesses will receive partial credit for the Service-Disabled Veteran-Owned and Veteran-owned Small Business Status evaluation factor. To receive credit, an offeror must be registered and verified in Vendor Information Pages (VIP) database. (http://www.VetBiz.gov).

(c) Non-veteran offerors proposing to use service-disabled veteran-owned small businesses or veteran-owned small businesses as subcontractors will receive some consideration under this evaluation factor. Offerors must state in their proposals the names of the SDVOSBs and VOSBs with whom they intend to subcontract and provide a brief description of the proposed subcontracts and the approximate dollar values of the proposed subcontracts. In addition, the proposed subcontractors must be registered and verified in the VetBiz.gov VIP database (http://www.vetbiz.gov).

(End of Clause)

**C.13 VAAR 852.215-71 EVALUATION FACTOR COMMITMENTS (DEC 2009)**

The offeror agrees, if awarded a contract, to use the service-disabled veteran-owned small businesses or veteran-owned small businesses proposed as subcontractors in accordance with 852.215-70, Service-Disabled Veteran-Owned and Veteran-Owned Small Business Evaluation Factors, or to substitute one or more service-disabled veteran-owned small businesses or veteran-owned small businesses for subcontract work of the same or similar value.

(End of Clause)

**C.14 VAAR 852.219-9 VA SMALL BUSINESS SUBCONTRACTING PLAN MINIMUM REQUIREMENTS (DEC 2009)**

(a) This clause does not apply to small business concerns.
(b) If the offeror is required to submit an individual subcontracting plan, the minimum goals for award of subcontracts to service-disabled veteran-owned small business concerns and veteran-owned small business concerns shall be at least commensurate with the Department's annual service-disabled veteran-

owned small business and veteran-owned small business prime contracting goals for the total dollars planned to be subcontracted.

(c) For a commercial plan, the minimum goals for award of subcontracts to service-disabled veteran-owned small business concerns and veteran-owned small businesses shall be at least commensurate with the Department's annual service-disabled veteran-owned small business and veteran-owned small business prime contracting goals for the total value of projected subcontracts to support the sales for the commercial plan.

(d) To be credited toward goal achievements, businesses must be verified as eligible in the Vendor Information Pages database. The contractor shall annually submit a listing of service-disabled veteran-owned small businesses and veteran-owned small businesses for which credit toward goal achievement is to be applied for the review of personnel in the Office of Small and Disadvantaged Business Utilization.

(e) The contractor may appeal any businesses determined not eligible for crediting toward goal achievements by following the procedures contained in 819.407.

(End of Clause)

**C.15 VAAR 852.219-71 VA MENTOR-PROTÉGÉ PROGRAM (DEC 2009)**

(a) Large businesses are encouraged to participate in the VA Mentor-Protégé Program for the purpose of providing developmental assistance to eligible service-disabled veteran-owned small businesses and veteran-owned small businesses to enhance the small businesses' capabilities and increase their participation as VA prime contractors and as subcontractors.

(b) The program consists of:

(1) Mentor firms, which are contractors capable of providing developmental assistance;

(2) Protégé firms, which are service-disabled veteran-owned small business concerns or veteran-owned small business concerns; and

(3) Mentor-Protégé Agreements approved by the VA Office of Small and Disadvantaged Business Utilization.

(c) Mentor participation in the program means providing business developmental assistance to aid protégés in developing the requisite expertise to effectively compete for and successfully perform VA prime contracts and subcontracts.

(d) Large business prime contractors serving as mentors in the VA Mentor-Protégé Program are eligible for an incentive for subcontracting plan credit. VA will recognize the costs incurred by a mentor firm in providing assistance to a protégé firm and apply those costs for purposes of determining whether the mentor firm attains its subcontracting plan participation goals under a VA contract. The amount of credit given to a mentor firm for these protégé developmental assistance costs shall be calculated on a dollar-for-dollar basis and reported by the large business prime contractor via the Electronic Subcontracting Reporting System (eSRS).

(e) Contractors interested in participating in the program are encouraged to contact the VA Office of Small and Disadvantaged Business Utilization for more information.

(End of Clause)

**C.16 VAAR 852.219-72 EVALUATION FACTOR FOR PARTICIPATION IN THE VA MENTOR-PROTÉGÉ PROGRAM (DEC 2009)**

This solicitation contains an evaluation factor or sub-factor regarding participation in the VA Mentor-Protégé Program. In order to receive credit under the evaluation factor or sub-factor, the offeror must provide with its proposal a copy of a signed letter issued by the VA Office of Small and Disadvantaged Business Utilization approving the offeror's Mentor-Protégé Agreement.

(End of Clause)

**C.17 VAAR 852.232-72 ELECTRONIC SUBMISSION OF PAYMENT REQUESTS (NOV 2012)**

(a) *Definitions.* As used in this clause—

(1) *Contract financing payment* has the meaning given in FAR 32.001.

(2) *Designated agency office* has the meaning given in 5 CFR 1315.2(m).

(3) *Electronic form* means an automated system transmitting information electronically according to the
Accepted electronic data transmission methods and formats identified in paragraph (c) of this clause. Facsimile, email, and scanned documents are not acceptable electronic forms for submission of payment requests.

(4) *Invoice payment* has the meaning given in FAR 32.001.

(5) *Payment request* means any request for contract financing payment or invoice payment submitted by the contractor under this contract.

(b) *Electronic payment requests.* Except as provided in paragraph (e) of this clause, the contractor shall submit payment requests in electronic form. Purchases paid with a Government-wide commercial purchase card are considered to be an electronic transaction for purposes of this rule, and therefore no additional electronic invoice submission is required.

(c) *Data transmission.* A contractor must ensure that the data transmission method and format are through one of the following:

(1) VA's Electronic Invoice Presentment and Payment System. (See Web site at *http://www.fsc.va.gov/einvoice.asp*.)

(2) Any system that conforms to the X12 electronic data interchange (EDI) formats established by the Accredited Standards Center (ASC) and chartered by the American National Standards Institute (ANSI). The X12 EDI Web site (*http://www.x12.org*) includes additional information on EDI 810 and 811 formats.

(d) *Invoice requirements.* Invoices shall comply with FAR 32.905.

(e) *Exceptions.* If, based on one of the circumstances below, the contracting officer directs that payment requests be made by mail, the contractor shall submit payment requests by mail through the United States Postal Service to the designated agency office. Submission of payment requests by mail may be required for:

(1) Awards made to foreign vendors for work performed outside the United States;

(2) Classified contracts or purchases when electronic submission and processing of payment requests could compromise the safeguarding of classified or privacy information;

(3) Contracts awarded by contracting officers in the conduct of emergency operations, such as responses to national emergencies;

(4) Solicitations or contracts in which the designated agency office is a VA entity other than the VA Financial Services Center in Austin, Texas; or

(5) Solicitations or contracts in which the VA designated agency office does not have electronic invoicing capability as described above.

(End of Clause)

**C.18 VAAR 852.237-7 INDEMNIFICATION AND MEDICAL LIABILITY INSURANCE (JAN 2008)**

(a) It is expressly agreed and understood that this is a non- personal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions. The Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance issued by a responsible insurance carrier of not less than the following amount(s) per specialty per occurrence: *__________________. However, if the Contractor is an entity or a subdivision of a State that either provides for self-insurance or limits the liability or the amount of insurance purchased by State entities, then the insurance requirement of this contract shall be fulfilled by incorporating the provisions of the applicable State law.

* Amounts are listed below:
(b) An apparently successful offeror, upon request of the Contracting Officer, shall, prior to contract award, furnish evidence of the insurability of the offeror and/or of all health- care providers who will perform under this contract. The submission shall provide evidence of insurability concerning the medical liability insurance required by paragraph (a) of this clause or the provisions of State law as to self-insurance, or limitations on liability or insurance.
(c) The Contractor shall, prior to commencement of services under the contract, provide to the Contracting Officer Certificates of Insurance or insurance policies evidencing the required insurance coverage and an endorsement stating that any cancellation or material change adversely affecting the Government's interest shall not be effective until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer. Certificates or policies shall be provided for the Contractor and/or each health- care provider who will perform under this contract.
(d) The Contractor shall notify the Contracting Officer if it, or any of the health-care providers performing under this contract, change insurance providers during the performance period of this contract. The notification shall provide evidence that the Contractor and/or health-care providers will meet all the requirements of this clause, including those concerning liability insurance and endorsements. These requirements may be met either under the new policy, or a combination of old and new policies, if applicable.
(e) The Contractor shall insert the substance of this clause, including this paragraph (e), in all subcontracts for health-care services under this contract. The Contractor shall be responsible for compliance by any subcontractor or lower-tier subcontractor with the provisions set forth in paragraph (a) of this clause.
* Amounts from paragraph (a) above:

$1 Million Per Occurrence
$3 Million Per Aggregate

(End of Clause)

**C.19 VAAR 852.237-70 CONTRACTOR RESPONSIBILITIES (APR 1984)**

The contractor shall obtain all necessary licenses and/or permits required to perform this work. He/she shall take all reasonable precautions necessary to protect persons and property from injury or damage during the performance of this contract. He/she shall be responsible for any injury to himself/herself, his/her employees, as well as for any damage to personal or public property that occurs during the performance of this contract that is caused by his/her employees fault or negligence, and shall maintain personal liability and property damage insurance having coverage for a limit as required by the laws of the State of Georgia, Florida, and the Commonwealth of Puerto Rico. Further, it is agreed that any negligence of the Government, its officers, agents, servants and employees, shall not be the responsibility of the contractor hereunder with the regard to any claims, loss, damage, injury, and liability resulting there from.

(End of Clause)

**C.20 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):
http://www.acquisition.gov/far/index.html
http://www.va.gov/oal/library/vaar/

(End of Clause)

| FAR Number | Title | Date |
|---|---|---|
| 52.202-1 | DEFINITIONS | NOV 2013 |
| 52.203-3 | GRATUITIES | APR 1984 |
| 52.203-5 | COVENANT AGAINST CONTINGENT FEES | MAY 2014 |
| 52.203-7 | ANTI-KICKBACK PROCEDURES | MAY 2014 |
| 52.203-16 | PREVENTING PERSONAL CONFLICTS OF INTEREST | DEC 2011 |
| 52.203-17 | CONTRACTOR EMPLOYEE WHISTLEBLOWER RIGHTS AND REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS | APR 2014 |
| 52.204-4 | PRINTED OR COPIED DOUBLE-SIDED ON RECYCLED PAPER | MAY 2011 |
| 52.204-12 | DATA UNIVERSAL NUMBERING SYSTEM NUMBER MAINTENANCE | DEC 2012 |
| 52.204-19 | INCORPORATION BY REFERENCE OF REPRESENTATIONS AND CERTIFICATIONS | DEC 2014 |
| 52.216-27 | SINGLE OR MULTIPLE AWARDS | OCT 1995 |
| 52.224-1 | PRIVACY ACT NOTIFICATION | APR 1984 |
| 52.224-2 | PRIVACY ACT | APR 1984 |
| 52.232-40 | PROVIDING ACCELERATED PAYMENTS TO SMALL BUSINESS SUBCONTRACTORS | DEC 2013 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| 52.233-4 | APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM | OCT 2004 |
| 52.237-3 | CONTINUITY OF SERVICES | JAN 1991 |
| 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS | JUN 2016 |

**C.21 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS—COMMERCIAL ITEMS (JUN 2016)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (NOV 2015).

(2) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Public Laws 108-77 and 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[x] (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

[x] (2) 52.203-13, Contractor Code of Business Ethics and Conduct (OCT 2015) (41 U.S.C. 3509).

[] (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (JUN 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

[x] (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (OCT 2015) (Pub. L. 109-282) (31 U.S.C. 6101 note).

[] (5) [Reserved]

[] (6) 52.204-14, Service Contract Reporting Requirements (JAN 2014) (Pub. L. 111-117, section 743 of Div. C).

[x]　(7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (JAN 2014) (Pub. L. 111-117, section 743 of Div. C).

[x]　(8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. (OCT 2015) (31 U.S.C. 6101 note).

[x]　(9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

[]　(10) [Reserved]

[]　(11)(i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (NOV 2011) (15 U.S.C. 657a).

[]　(ii) Alternate I (NOV 2011) of 52.219-3.

[x]　(12)(i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (OCT 2014) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

[]　(ii) Alternate I (JAN 2011) of 52.219-4.

[]　(13) [Reserved]

[]　(14)(i) 52.219-6, Notice of Total Small Business Set-Aside (NOV 2011) (15 U.S.C. 644).

[]　(ii) Alternate I (NOV 2011).

[]　(iii) Alternate II (NOV 2011).

[]　(15)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

[]　(ii) Alternate I (Oct 1995) of 52.219-7.

[]　(iii) Alternate II (Mar 2004) of 52.219-7.

[x]　(16) 52.219-8, Utilization of Small Business Concerns (OCT 2014) (15 U.S.C. 637(d)(2) and (3).

[x]　(17)(i) 52.219-9, Small Business Subcontracting Plan (OCT 2015) (15 U.S.C. 637(d)(4)).

[]　(ii) Alternate I (Oct 2001) of 52.219-9.

[x]　(iii) Alternate II (Oct 2001) of 52.219-9.

[]　(iv) Alternate III (OCT 2015) of 52.219-9.

[]　(18) 52.219-13, Notice of Set-Aside of Orders (NOV 2011) (15 U.S.C. 644(r)).

[]　(19) 52.219-14, Limitations on Subcontracting (NOV 2011) (15 U.S.C. 637(a)(14)).

[x]　(20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

[]　(21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (NOV 2011) (15 U.S.C. 657f).

[x]　(22) 52.219-28, Post Award Small Business Program Rerepresentation (Jul 2013) (15 U.S.C 632(a)(2)).

[]　(23) 52.219-29, Notice of Set-Aside for, or Sole Source Award to, Economically Disadvantaged Women-Owned Small Business Concerns (DEC 2015) (15 U.S.C. 637(m)).

[]　(24) 52.219-30, Notice of Set-Aside for, or Sole Source Award to, Women-Owned Small Business Concerns Eligible Under the Women-Owned Small Business Program (DEC 2015) (15 U.S.C. 637(m)).

[x]　(25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

[]　(26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (FEB 2016) (E.O. 13126).

[x]　(27) 52.222-21, Prohibition of Segregated Facilities (APR 2015).

[x]　(28) 52.222-26, Equal Opportunity (APR 2015) (E.O. 11246).

[x]　(29) 52.222-35, Equal Opportunity for Veterans (OCT 2015) (38 U.S.C. 4212).

[x]　(30) 52.222-36, Equal Opportunity for Workers with Disabilities (JUL 2014) (29 U.S.C. 793).

[x]　(31) 52.222-37, Employment Reports on Veterans (FEB 2016) (38 U.S.C. 4212).

[x]　(32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

[x]　(33)(i) 52.222-50, Combating Trafficking in Persons (MAR 2015) (22 U.S.C. chapter 78 and E.O. 13627).

[]　(ii) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

[x]　(34) 52.222-54, Employment Eligibility Verification (OCT 2015). (E. O. 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

[] (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C.6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

[] (36) 52.223-11, Ozone-Depleting Substances and High Global Warming Potential Hydrofluorocarbons (JUN 2016) (E.O. 13693).

[] (37) 52.223-12, Maintenance, Service, Repair, or Disposal of Refrigeration Equipment and Air Conditioners (JUN 2016) (E.O. 13693).

[] (ii) Alternate I (MAY 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

[] (38)(i) 52.223-13, Acquisition of EPEAT®-Registered Imaging Equipment (JUN 2014) (E.O.s 13423 and 13514).

[] (ii) Alternate I (OCT 2015) of 52.223-13.

[] (39)(i) 52.223-14, Acquisition of EPEAT®-Registered Televisions (JUN 2014) (E.O.s 13423 and 13514).

[] (ii) Alternate I (JUN 2014) of 52.223-14.

[x] (40) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007)(42 U.S.C. 8259b).

[] (41)(i) 52.223-16, Acquisition of EPEAT®-Registered Personal Computer Products (OCT 2015) (E.O.s 13423 and 13514).

[] (ii) Alternate I (JUN 2014) of 52.223-16.

[x] (42) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011)

[] (43) 52.223-20, Aerosols (JUN 2016) (E.O. 13693).

[] (44) 52.223-21, Foams (JUN 2016) (E.O. 13693).

[x] (45) 52.225-1, Buy American—Supplies (MAY 2014) (41 U.S.C. chapter 83).

[] (46)(i) 52.225-3, Buy American—Free Trade Agreements—Israeli Trade Act (MAY 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43.

[] (ii) Alternate I (MAY 2014) of 52.225-3.

[] (iii) Alternate II (MAY 2014) of 52.225-3.

[] (iv) Alternate III (MAY 2014) of 52.225-3.

[x] (47) 52.225-5, Trade Agreements (FEB 2016) (19 U.S.C. 2501, *et seq*., 19 U.S.C. 3301 note).

[x] (48) 52.225-13, Restrictions on Certain Foreign Purchases (JUN 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

[] (49) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

[] (50) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

[] (51) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

[] (52) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

[] (53) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

[x] (54) 52.232-33, Payment by Electronic Funds Transfer—System for Award Management (Jul 2013) (31 U.S.C. 3332).

[] (55) 52.232-34, Payment by Electronic Funds Transfer—Other than System for Award Management (Jul 2013) (31 U.S.C. 3332).

[] (56) 52.232-36, Payment by Third Party (MAY 2014) (31 U.S.C. 3332).

[x] (57) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

[] (58)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

[] (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[] (1) 52.222-17, Nondisplacement of Qualified Workers (MAY 2014) (E.O. 13495).

[x] (2) 52.222-41, Service Contract Labor Standards (MAY 2014) (41 U.S.C. chapter 67).

[x] (3) 52.222-42, Statement of Equivalent Rates for Federal Hires (MAY 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

[x] (4) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment (Multiple Year and Option Contracts) (MAY 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

[] (5) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment (MAY 2014) (29 U.S.C 206 and 41 U.S.C. chapter 67).

[] (6) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (MAY 2014) (41 U.S.C. chapter 67).

[] (7) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirements (MAY 2014) (41 U.S.C. chapter 67).

[x] (8) 52.222-55, Minimum Wages Under Executive Order 13658 (DEC 2015).

[] (9) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAY 2014) (42 U.S.C. 1792).

[] (10) 52.237-11, Accepting and Dispensing of $1 Coin (SEP 2008) (31 U.S.C. 5112(p)(1)).

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (OCT 2015) (41 U.S.C. 3509).

(ii) 52.219-8, Utilization of Small Business Concerns (OCT 2014) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $700,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(iii) 52.222-17, Nondisplacement of Qualified Workers (MAY 2014) (E.O. 13495). Flow down required in accordance with paragraph (l) of FAR clause 52.222-17.

(iv) 52.222-21, Prohibition of Segregated Facilities (APR 2015).

(v) 52.222-26, Equal Opportunity (APR 2015) (E.O. 11246).

(vi) 52.222-35, Equal Opportunity for Veterans (OCT 2015) (38 U.S.C. 4212).

(vii) 52.222-36, Equal Opportunity for Workers with Disabilities (JUL 2014) (29 U.S.C. 793).

   (viii) 52.222-37, Employment Reports on Veterans (FEB 2016) (38 U.S.C. 4212).

(ix) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(x) 52.222-41, Service Contract Labor Standards (MAY 2014) (41 U.S.C. chapter 67).

(xi)(A) 52.222-50, Combating Trafficking in Persons (MAR 2015) (22 U.S.C. chapter 78 and E.O. 13627).

(B) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

(xii) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (MAY 2014) (41 U.S.C. chapter 67).

(xiii) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirements (MAY 2014) (41 U.S.C. chapter 67).

(xiv) 52.222-54, Employment Eligibility Verification (OCT 2015) (E. O. 12989).

(xv) 52.222-55, Minimum Wages Under Executive Order 13658 (DEC 2015).

(xvi) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xvii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAY 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xviii) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the Contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

**C.22 MANDATORY WRITTEN DISCLOSURES**

Mandatory written disclosures required by FAR clause 52.203-13 to the Department of Veterans Affairs, Office of Inspector General (OIG) must be made electronically through the VA OIG Hotline at http://www.va.gov/oig/contacts/hotline.asp and clicking on "FAR clause 52.203-13 Reporting." If you experience difficulty accessing the website, call the Hotline at 1-800-488-8244 for further instructions.

**SECTION D - CONTRACT DOCUMENTS, EXHIBITS, OR ATTACHMENTS**

**D.1 ATTACHMENT 1 QUALITY ASSURANCE SURVEILLANCE PLAN**

See attached document: ATTACHMENT 1 VISN 8 CNH Quality Assurance Surveillance Plan MEDICAID.

**D.2 ATTACHMENT 2 WAGE DETERMINATIONS**

See attached document: ATTACHMENT 2 E98 - WAGE DETERMINATION.

**D.3 ATTACHMENT 3 PAST PERFORMANCE QUESTIONNAIRE**

See attached document: ATTACHMENT 3 PAST PERFORMANCE QUESTIONNAIRES.

**D.4 ATTACHMENT 4 CONTRACTOR CERTIFICATIONS**

See attached document: ATTACHMENT 4 CONTRACTOR CERTIFICATIONS.

**D.5 ATTACHMENT 5 SUBCONTRACTING PLAN**

See attached document: ATTACHMENT 5 SUBCONTRACTING PLAN.

## SECTION E - SOLICITATION PROVISIONS

### E.1 52.212-1 INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS (OCT 2015)

(a) *North American Industry Classification System (NAICS) code and small business size standard*. The NAICS code and small business size standard for this acquisition appear in Block 10 of the solicitation cover sheet (SF 1449). However, the small business size standard for a concern which submits an offer in its own name, but which proposes to furnish an item which it did not itself manufacture, is 500 employees.

(b) *Submission of offers*. Submit signed and dated offers to the office specified in this solicitation at or before the exact time specified in this solicitation. Offers may be submitted on the SF 1449, letterhead stationery, or as otherwise specified in the solicitation. As a minimum, offers must show—

(1) The solicitation number;

(2) The time specified in the solicitation for receipt of offers;

(3) The name, address, and telephone number of the offeror;

(4) A technical description of the items being offered in sufficient detail to evaluate compliance with the requirements in the solicitation. This may include product literature, or other documents, if necessary;

(5) Terms of any express warranty;

(6) Price and any discount terms;

(7) "Remit to" address, if different than mailing address;

(8) A completed copy of the representations and certifications at FAR 52.212-3 (see FAR 52.212-3(b) for those representations and certifications that the offeror shall complete electronically);

(9) Acknowledgment of Solicitation Amendments;

(10) Past performance information, when included as an evaluation factor, to include recent and relevant contracts for the same or similar items and other references (including contract numbers, points of contact with telephone numbers and other relevant information); and

(11) If the offer is not submitted on the SF 1449, include a statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation. Offers that fail to furnish required representations or information, or reject the terms and conditions of the solicitation may be excluded from consideration.

(c) *Period for acceptance of offers*. The offeror agrees to hold the prices in its offer firm for 180 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

(d) *Product samples*. When required by the solicitation, product samples shall be submitted at or prior to the time specified for receipt of offers. Unless otherwise specified in this solicitation, these samples shall be submitted at no expense to the Government, and returned at the sender's request and expense, unless they are destroyed during preaward testing.

(e) *Multiple offers*. Offerors are encouraged to submit multiple offers presenting alternative terms and conditions or commercial items for satisfying the requirements of this solicitation. Each offer submitted will be evaluated separately.

(f) Late submissions, modifications, revisions, and withdrawals of offers.

(1) Offerors are responsible for submitting offers, and any modifications, revisions, or withdrawals, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that offers or revisions are due.

(2)(i) Any offer, modification, revision, or withdrawal of an offer received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and—

(A) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers; or

(B) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or

(C) If this solicitation is a request for proposals, it was the only proposal received.

(ii) However, a late modification of an otherwise successful offer, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted.

(3) Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the offer wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel.

(4) If an emergency or unanticipated event interrupts normal Government processes so that offers cannot be received at the Government office designated for receipt of offers by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation or other notice of an extension of the closing date, the time specified for receipt of offers will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

(5) Offers may be withdrawn by written notice received at any time before the exact time set for receipt of offers. Oral offers in response to oral solicitations may be withdrawn orally. If the solicitation authorizes facsimile offers, offers may be withdrawn via facsimile received at any time before the exact time set for receipt of offers, subject to the conditions specified in the solicitation concerning facsimile offers. An offer may be withdrawn in person by an offeror or its authorized representative if, before the exact time set for receipt of offers, the identity of the person requesting withdrawal is established and the person signs a receipt for the offer.

(g) *Contract award (not applicable to Invitation for Bids).* The Government intends to evaluate offers and award a contract without discussions with offerors. Therefore, the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint. However, the Government reserves the right to conduct discussions if later determined by the Contracting Officer to be necessary. The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received.

(h) *Multiple awards.* The Government may accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitations. Unless otherwise provided in the Schedule, offers may not be submitted for quantities less than those specified. The Government reserves the right to make an award on any item for a quantity less than the quantity offered, at the unit prices offered, unless the offeror specifies otherwise in the offer.

(i) Availability of requirements documents cited in the solicitation.

(1)(i) The GSA Index of Federal Specifications, Standards and Commercial Item Descriptions, FPMR Part 101-29, and copies of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained for a fee by submitting a request to—

GSA Federal Supply Service Specifications Section
Suite 8100 470 East L'Enfant Plaza, SW
Washington, DC 20407
Telephone (202) 619-8925
Facsimile (202) 619-8978.

(ii) If the General Services Administration, Department of Agriculture, or Department of Veterans Affairs issued this solicitation, a single copy of specifications, standards, and commercial item descriptions cited in this solicitation may be obtained free of charge by submitting a request to the addressee in paragraph (i)(1)(i) of this provision. Additional copies will be issued for a fee.

(2) Most unclassified Defense specifications and standards may be downloaded from the following ASSIST websites:

(i) ASSIST (https://assist.dla.mil/online/start/);

(ii) Quick Search (http://quicksearch.dla.mil/);

(iii) ASSISTdocs.com (http://assistdocs.com).

(3) Documents not available from ASSIST may be ordered from the Department of Defense Single Stock Point (DoDSSP) by?

(i) Using the ASSIST Shopping Wizard (https://assist.dla.mil/wizard/index.cfm);

(ii) Phoning the DoDSSP Customer Service Desk (215) 697-2179, Mon-Fri, 0730 to 1600 EST; or

(iii) Ordering from DoDSSP, Building 4, Section D, 700 Robbins Avenue, Philadelphia, PA 19111-5094, Telephone (215) 697-2667/2179, Facsimile (215) 697-1462.

(4) Nongovernment (voluntary) standards must be obtained from the organization responsible for their preparation, publication, or maintenance.

(j) *Data Universal Numbering System (DUNS) Number*. (Applies to all offers exceeding $3,500, and offers of $3,500 or less if the solicitation requires the Contractor to be registered in the System for Award Management (SAM) database. The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" or "DUNS +4" followed by the DUNS or DUNS +4 number that identifies the offeror's name and address. The DUNS +4 is the DUNS number plus a 4-character suffix that may be assigned at the discretion of the offeror to establish additional SAM records for identifying alternative Electronic Funds Transfer (EFT) accounts (see FAR Subpart 32.11) for the same concern. If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one. An offeror within the United States may contact Dun and Bradstreet by calling 1-866-705-5711 or via the internet at http://www.fedgov.dnb.com/webform. An offeror located outside the United States must contact the local Dun and Bradstreet office for a DUNS number. The offeror should indicate that it is an offeror for a Government contract when contacting the local Dun and Bradstreet office.

(k) *System for Award Management*. Unless exempted by an addendum to this solicitation, by submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in the SAM database prior to award, during performance and through final payment of any contract resulting from this solicitation. If the Offeror does not become registered in the SAM database in the time prescribed by the Contracting Officer, the Contracting Officer will proceed to award to the next otherwise successful registered Offeror. Offerors may obtain information on registration and annual confirmation requirements via the SAM database accessed through https://www.acquisition.gov.

(l) *Debriefing*. If a post-award debriefing is given to requesting offerors, the Government shall disclose the following information, if applicable:

(1) The agency's evaluation of the significant weak or deficient factors in the debriefed offeror's offer.

(2) The overall evaluated cost or price and technical rating of the successful and the debriefed offeror and past performance information on the debriefed offeror.

(3) The overall ranking of all offerors, when any ranking was developed by the agency during source selection.

(4) A summary of the rationale for award;

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror.

(6) Reasonable responses to relevant questions posed by the debriefed offeror as to whether source-selection procedures set forth in the solicitation, applicable regulations, and other applicable authorities were followed by the agency.

(End of Provision)

ADDENDUM to FAR 52.212-1 INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS

Provisions that are incorporated by reference (by Citation Number, Title, and Date), have the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

The following provisions are incorporated into 52.212-1 as an addendum to this solicitation:

Addendum to 52.212-1 (c) – Period for acceptance of offers to change 30 calendar days from the date specified for receipt of offers to read 180 calendar days from the date specified for receipt of offers. (Paragraph c, Page 34).

**ADDITIONAL INSTRUCTIONS TO OFFERORS:** To provide a basis for sound evaluation by the government, Offerors shall submit a complete proposal. The information provided shall be concise, factual, and complete. Proposals will be considered only from Offerors that are regularly established in the business and in the judgment of the government, are deemed financially responsible and able to show evidence of experience and have submitted the complete documentation requested.

Offerors shall be registered in the system for award management (SAM) under the applicable North American Industry Classification System (NAICS) prior to contract award. The applicable NAICS shall be identified in the Contractor's Online Representations and Certifications Application (ORCA) prior to contract award.

**TECHNICAL QUESTIONS**: Offerors should submit all technical questions regarding this solicitation to Rodney F. Cassidy, CS at Rodney.Cassidy@va.gov. All responses to questions, which may affect offers, will be incorporated into a written amendment to the solicitation and released via the Federal Business Opportunities System Website (www.fedbizopps.gov ).

If a potential offeror believes that the requirements in these instructions contain an error or omission, the offeror shall immediately notify the CS via the email address stated above.

Offerors are hereby advised that any imposed terms and conditions which deviate from the Government's material terms and conditions established in the solicitation may render their proposal unacceptable and ineligible for award.

**SUBMISSION OF PROPOSAL**: Evaluation of all proposals will be made in accordance with the criteria outlined in the section below. The following factors will be used to evaluate offers:

TECHNICAL FACTOR 1: Regulatory and Compliance
- Sub-factor A
- Sub-factor B
- Sub-factor C
- Sub-factor D
- Sub-factor E

TECHNICAL FACTOR 2: Quality Control:
- Sub-factor A

TECHNICAL FACTOR 3: Management Approach
- Sub-factor A
- Sub-factor B

FACTOR 4 – Past Performance Evaluation
- Sub-factor A
- Sub-factor B
- Sub-factor C
- Sub-factor D

FACTOR 5 – Inspection
FACTOR 6 – Price Evaluation
FACTOR 7 – Veterans Preference
FACTOR 8 – VA Mentor-Protégé Program

Technical Capability, past performance, Veterans Preference, and inspections when combined, are significantly more important than price. Additional information regarding the evaluation factors are included under Federal Acquisition Regulation (FAR) Clause 52.212-2 Evaluation – Commercial Items.

Proposals shall be submitted electronically. It is the responsibility of the Offeror to follow up to ensure that the proposal was received no later than the due time of the Request for Proposal (RFP). Offerors are

advised to review FAR 15.208 Submission, modification, revision, and withdrawal of the proposals to review how late proposals will be addressed.

All proposals shall be received by Network Contracting Office 8 at the email address listed above no later than 12:00 p.m. EST on May 10, 2018.

**FORMAT**:  The Offeror's proposal shall be submitted electronically by the date and time specified in the RFP.  The Offeror's proposal shall consist of three (3) volumes.  Volume I shall consist of technical documents.  Volume II shall consist of all completed and signed attachments from Section D.  Volume III shall consist of the solicitation pages.  Each volume shall be submitted in the same email.  The subject of the email shall reflect the RFP number and the Offeror's name.  The total size of the proposal (Volumes I, II, and III) shall not exceed 6MB.

**SOLICITATION PAGES TO BE COMPLETED AND RETURNED**:  Complete blocks 12, 17a, and 30a, b, and c of the SF1449.  In doing so, the Offeror agrees to the contract terms and conditions as written in the RFP, with attachments.

Section B.1a, Continuation of SF1449 Blocks, Contract Administration Data, Fill in: 1a. Contract Administration; and section five (5), Acknowledgement of Amendments, if applicable.

Compete required attachments as identified in Section D and return all applicable attachments.

The Past Performance Questionnaire shall be completed by the Offeror's reference(s) and not the Offeror. The questionnaire shall be returned by the Assessor to the CS.

**RESPONSBILITY OF OFFEROR**:  Responsibility determinations will be made in accordance with FAR 9.1, Responsible Prospective Contractors.

**PERFORMACE WORK STATEMENTS (PWS):**  Facility driven: Each VAMC will have the right to tailor the PWS to address specific needs or concerns surrounding the ADCHS program for that facility.

**VOLUMES**:  Each volume shall be clearly identified at the top of the page.  All pages of each volume shall be appropriately numbered and identified by the complete company name, date and RFP number in the header and/or footer.

**TECHNICAL DOCUMENTS**:

    a.   Location of Facility
    b.   Number of Beds
    c.   Medicare/Medicaid Approval
    d.   State Licensure
    e.   Insurance Policy
    f.   Past three State inspection Reports
    g.   Socio Economic Status (i.e. Service Disabled Veteran Owned Small Business (SDVOSB), Veteran Owned Small Business (VOSB) etc.)

**E.2   52.203-98 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS—REPRESENTATION (DEVIATION) (FEB 2015)**

 (a) In accordance with section 743 of Division E, Title VII, of the Consolidated and Further Continuing Resolution Appropriations Act, 2015 (Pub. L. 113-235), Government agencies are not permitted to use

funds appropriated (or otherwise made available) under that or any other Act for contracts with an entity that requires employees or subcontractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or contactors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

(b) The prohibition in paragraph (a) of this provision does not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

(c) *Representation*. By submission of its offer, the Offeror represents that it does not require employees or subcontractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

(End of Provision)

**E.3 52.204-7 SYSTEM FOR AWARD MANAGEMENT (JUL 2013)**

(a) Definitions. As used in this provision—

*Data Universal Numbering System (DUNS) number* means the 9-digit number assigned by Dun and Bradstreet, Inc. (D&B) to identify unique business entities.

*Data Universal Numbering System +4 (DUNS+4) number* means the DUNS number assigned by D&B plus a 4-character suffix that may be assigned by a business concern. (D&B has no affiliation with this 4-character suffix.) This 4-character suffix may be assigned at the discretion of the business concern to establish additional System for Award Management records for identifying alternative Electronic Funds Transfer (EFT) accounts (see the FAR at Subpart 32.11) for the same concern.

*Registered in the System for Award Management (SAM) database* means that—

(1) The offeror has entered all mandatory information, including the DUNS number or the DUNS+4 number, the Contractor and Government Entity (CAGE) code, as well as data required by the Federal Funding Accountability and Transparency Act of 2006 (see Subpart 4.14) into the SAM database;

(2) The offeror has completed the Core, Assertions, and Representations and Certifications, and Points of Contact sections of the registration in the SAM database;

(3) The Government has validated all mandatory data fields, to include validation of the Taxpayer Identification Number (TIN) with the Internal Revenue Service (IRS). The offeror will be required to provide consent for TIN validation to the Government as a part of the SAM registration process; and

(4) The Government has marked the record "Active".

(b)(1) By submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in the SAM database prior to award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation.

(2) The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" or "DUNS +4" followed by the DUNS or DUNS +4 number that identifies the offeror's name and address exactly as stated in the offer. The DUNS number will be used by the Contracting Officer to verify that the offeror is registered in the SAM database.

(c) If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one.

(1) An offeror may obtain a DUNS number—

(i) Via the Internet at http://fedgov.dnb.com/webform or if the offeror does not have internet access, it may call Dun and Bradstreet at 1-866-705-5711 if located within the United States; or

(ii) If located outside the United States, by contacting the local Dun and Bradstreet office. The offeror should indicate that it is an offeror for a U.S. Government contract when contacting the local Dun and Bradstreet office.

(2) The offeror should be prepared to provide the following information:

(i) Company legal business.
(ii) Trade style, doing business, or other name by which your entity is commonly recognized.
(iii) Company Physical Street Address, City, State, and Zip Code.
(iv) Company Mailing Address, City, State and Zip Code (if separate from physical).
(v) Company Telephone Number.
(vi) Date the company was started.
(vii) Number of employees at your location.
(viii) Chief executive officer/key manager.
(ix) Line of business (industry).
(x) Company Headquarters name and address (reporting relationship within your entity).

(d) If the Offeror does not become registered in the SAM database in the time prescribed by the Contracting Officer, the Contracting Officer will proceed to award to the next otherwise successful registered Offeror.

(e) Processing time, which normally takes 48 hours, should be taken into consideration when registering. Offerors who are not registered should consider applying for registration immediately upon receipt of this solicitation.

(f) Offerors may obtain information on registration at https://www.acquisition.gov.

(End of Provision)

**E.4 52.204-17 OWNERSHIP OR CONTROL OF OFFEROR (NOV 2014)**

(a) *Definitions.* As used in this provision—

*Commercial and Government Entity (CAGE) code* means—

(1) An identifier assigned to entities located in the United States or its outlying areas by the Defense Logistics Agency (DLA) Contractor and Government Entity (CAGE) Branch to identify a commercial or government entity, or

(2) An identifier assigned by a member of the North Atlantic Treaty Organization (NATO) or by the NATO Support Agency (NSPA) to entities located outside the United States and its outlying areas that the DLA Contractor and Government Entity (CAGE) Branch records and maintains in the CAGE master file. This type of code is known as an NCAGE code.

*Highest-level owner* means the entity that owns or controls an immediate owner of the offeror, or that owns or controls one or more entities that control an immediate owner of the offeror. No entity owns or exercises control of the highest level owner.

*Immediate owner* means an entity, other than the offeror, that has direct control of the offeror. Indicators of control include, but are not limited to, one or more of the following: Ownership or interlocking management, identity of interests among family members, shared facilities and equipment, and the common use of employees.

(b) The Offeror represents that it [ ] has or [ ] does not have an immediate owner. If the Offeror has more than one immediate owner (such as a joint venture), then the Offeror shall respond to paragraph (c) and if applicable, paragraph (d) of this provision for each participant in the joint venture.

(c) If the Offeror indicates “has” in paragraph (b) of this provision, enter the following information:
Immediate owner CAGE code:

_______________________________________________________

Immediate owner legal name: __________________________________

(*Do not use a “doing business as” name*)

Is the immediate owner owned or controlled by another entity?: [ ] Yes or [ ] No.

(d) If the Offeror indicates “yes” in paragraph (c) of this provision, indicating that the immediate owner is owned or controlled by another entity, then enter the following information:
Highest-level owner CAGE code:

_______________________________________________________

Highest-level owner legal name:

_______________________________________________________

(*Do not use a “doing business as” name*)

(End of Provision)

**E.5 52.209-7 INFORMATION REGARDING RESPONSIBILITY MATTERS (JUL 2013)**

  (a) *Definitions.* As used in this provision—

  "Administrative proceeding" means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative Proceedings, Civilian Board of Contract Appeals Proceedings, and Armed Services Board of Contract Appeals Proceedings). This includes administrative proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include agency actions such as contract audits, site visits, corrective plans, or inspection of deliverables.

  "Federal contracts and grants with total value greater than $10,000,000" means—

    (1) The total value of all current, active contracts and grants, including all priced options; and

    (2) The total value of all current, active orders including all priced options under indefinite-delivery, indefinite-quantity, 8(a), or requirements contracts (including task and delivery and multiple-award Schedules).

  "Principal" means an officer, director, owner, partner, or a person having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a division or business segment; and similar positions).

  (b) The offeror [ ] has [ ] does not have current active Federal contracts and grants with total value greater than $10,000,000.

  (c) If the offeror checked "has" in paragraph (b) of this provision, the offeror represents, by submission of this offer, that the information it has entered in the Federal Awardee Performance and Integrity Information System (FAPIIS) is current, accurate, and complete as of the date of submission of this offer with regard to the following information:

    (1) Whether the offeror, and/or any of its principals, has or has not, within the last five years, in connection with the award to or performance by the offeror of a Federal contract or grant, been the subject of a proceeding, at the Federal or State level that resulted in any of the following dispositions:

      (i) In a criminal proceeding, a conviction.

      (ii) In a civil proceeding, a finding of fault and liability that results in the payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more.

      (iii) In an administrative proceeding, a finding of fault and liability that results in—

        (A) The payment of a monetary fine or penalty of $5,000 or more; or

        (B) The payment of a reimbursement, restitution, or damages in excess of $100,000.

      (iv) In a criminal, civil, or administrative proceeding, a disposition of the matter by consent or compromise with an acknowledgment of fault by the Contractor if the proceeding could have led to any of the outcomes specified in paragraphs (c)(1)(i), (c)(1)(ii), or (c)(1)(iii) of this provision.

    (2) If the offeror has been involved in the last five years in any of the occurrences listed in (c)(1) of this provision, whether the offeror has provided the requested information with regard to each occurrence.

  (d) The offeror shall post the information in paragraphs (c)(1)(i) through (c)(1)(iv) of this provision in FAPIIS as required through maintaining an active registration in the System for Award Management database via https://www.acquisition.gov (see 52.204-7).

(End of Provision)


**E.6  52.212-2  EVALUATION—COMMERCIAL ITEMS (OCT 2014)**

  (a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

        TECHNICAL FACTOR 1: Regulatory and Compliance

                Sub-factor A

                Sub-factor B

                Sub-factor C

                Sub-factor D

                Sub-factor E

                TECHNICAL FACTOR 2: Quality Control:

Sub-factor A
TECHNICLA FACTOR 3: Management Approach:
Sub-factor A
Sub-factor B
FACTOR 4 – Past Performance
Sub-factor A
Sub-factor B
Sub-factor C
Sub-factor D
FACTOR 5 – Inspections
FACTOR 6 – Price Evaluation
FACTOR 7 – Veterans Preference
FACTOR 8 – VA Mentor-Protégé Program

Technical Capability, past performance, inspections, and Veterans Preference when combined, are significantly more important than price.

(b) *Options.* The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. The Government may determine that an offer is unacceptable if the option prices are significantly unbalanced. Evaluation of options shall not obligate the Government to exercise the option(s).

(c) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(End of Provision)

**Addendum to FAR 52.212-2 Evaluation Factors**

The Government intends to award a fixed price IDIQ contract, with an economic price adjustment (EPA) for Off-Site Adult Day Health Care services in accordance with all terms, conditions, provisions, specifications, and schedules of this solicitation herein. The Government anticipates a single award for this performance based acquisition. The evaluation factors will be applied to all proposals in the same manner. Each proposal will be evaluated strictly in accordance with its content and the Government will not assume that performance will include areas not specified in the offerors proposal. The Offeror shall demonstrate understanding of the requirements of the PWS, and submit a proposal that will meet those objectives. The proposal will be evaluated based on the proposed approach to perform the work.

The award will be made based on the lowest price technically acceptable proposal that is determined to be the most advantageous to the Government. Technical Factors, Regulatory and Compliance, Quality Control: Management Approach: Past Performance Inspections Price Evaluation Veterans Preference, and VA Mentor-Protégé Program, when combined, are significantly more important than price. However, price could become the determining factor, if the proposals are determined to be essentially equal. The trade-off between Technical Factors, Veterans Preference, VA Mentor-Protégé Program, past performance and price could result in awarding to other than the lowest offeror.

**Any proposal that is not in compliance with the requirements of the solicitation will be considered unacceptable and ineligible for award.**

The evaluation factors are listed in descending order of importance.

The Sub-factors are listed in descending order of each factor.

Each factor and sub-factor, when combined is more important than price.

The following evaluation technical factors, factors and sub-factors will be used to evaluate each proposal:

**TECHNICAL FACTOR 1: Regulatory and Compliance**: The Adult Day Health Care facility will meet all Federal and State regulatory requirements and industry practices, as applicable, and be in compliance with such regulations and standards.

**Sub-factor A:** Facility is in compliance with most recent standards of Life Safety Standards – National Fire Protection Association Standard and applicable Federal, State and local regulations

**Sub-factor B:** Facility must be 100% sprinkled and can demonstrate evidence of this fact upon request.

**Sub-factor C:** Facility has current Center for Medicare and Medicaid Services (CMS) certification (Medicare and/or Medicaid) and State license

**Sub-factor D:** Facility has Medical Liability Insurance/Professional Liability Insurance at the minimum level as required by the State and VAAR 852.237-7, Indemnification and Medical Liability.

**Sub-factor E:** If the Adult Day Health Care fails four (4) or more of the seven (7) sections listed below (i-vii), then the Adult Day Health Care will not be rated as Technically Acceptable.

Note: For the following state averages, see the Adult Day Health Care Compare website: **https://www.medicare.gov/nursinghomecompare/?bhcp=1**

Following are the VHA Quality of Care Exclusionary Criteria:

i. **Deficiencies – Deficiencies rated G- L:** Standard: ADCHS fails this criterion when there are three or more level G - L deficient standards in the current State Survey and subsequent findings as shown in Adult Day Health Care Compare. (Note that G- L deficiencies are equivalent to a Adult Day Health Care Compare "*Level of Harm*" of 3 or 4.)

ii. **Health Requirement Deficiencies: Standard:** ADCHS fails this criterion when "Total number of Health Deficiencies" are equal to or greater than twice the State average as reported in Adult Day Health Care Compare for the current annual State Survey and subsequent findings as shown in Adult Day Health Care Compare.

iii. **Staff Treatment of Residents & Facility Licensure: Program Requirement Rating E-L or higher: Standard:** ADCHS fails this criterion when OSCAR Level E – L or Adult Day Health Care Compare score of 2 or higher is found in any following measures: Restraints (Federal Tag, F221 or F222); Abuse – F223; Staff Treatment of Patients (includes background check) – F225 or F226; Dignity – F241; or, Licensure – F491; reference CMS Adult Day Health Care Compare.

iv. **RN Hours: Standard:** ADCHS fails this criterion when "RN Hours per Resident per Day" are below State average. Use Adult Day Health Care Compare information only.

  v. **Total Nursing Staff: Standard:** ADCHS fails this criterion when "Total number of nurse staff hours per resident per day" are below State average. Use Adult Day Health Care Compare information only.

vi. **Staffing Deficiencies: Standard:** ADCHS fails this criterion when there is one or more F-Tag deficiencies rated as E – L in the current State Survey and subsequent findings as shown in Adult Day Health Care Compare. (Note that Scope and Severity deficiencies rated E-F are equivalent to Adult Day Health Care Compare "Level of Harm" of 2 with "Some" or "Many" Residents Affected, and Scope and Severity G-L deficiencies are equivalent to a Adult Day Health Care Compare "Level of Harm" of 3 or 4.): Nursing Services – F353; Nursing Aide Training – F494 or F495 or F496; Regular In-Service Training – F497; Proficiency of Nursing Aides – F498; or Staff Qualifications – F499; reference CMS Adult Day Health Care Compare.

vii. **Quality Measures: Standard:** ADCHS fails this criterion when six or more of the CMS Quality Measures listed in Adult Day Health Care Compare are worse than the State average.

**TECHNICAL FACTOR 2: <u>Quality Control</u>**: Facility can demonstrate its latest plan of correction is approved by the state for any deficiencies.

**Sub-factor A:** Facility can show upon request evidence that its latest plan of correction is approved by the State for any pending deficiencies.

**TECHNICAL FACTOR 3: <u>Management Approach</u>**: Adult Day Health Care will demonstrate timely access to care and resources.

**Sub-factor A:** Facility has bed capacity to ensure the ability to take referrals when requested (i.e. Long Term Care referrals).

**Sub-factor B:** Facility is able to accept VA referrals in a timely fashion: long term and short term (ideally within 24 hours of request).

**FACTOR 4: <u>Past Performance Evaluation</u>**: Past performance is one indicator of an offeror's ability to perform the contract successfully. Proposals that lack any past performance will receive a neutral rating. Past performance shall consist of:

**Sub-factor A:** If you are an incumbent VA-contracted facility, your previous performance under the VA Basic Ordering Agreement (BOA) or other contract vehicle;

**Sub-factor B:** Your Adult Day Health Care's most recent State inspections report including Statement of Deficiencies and Plan of Correction;

**Sub-factor C:** Any current State Ombudsman report that relates to your facility within the last two (2) years, and

**Sub-factor D:** VA requires Adult Day Health Care with a Medicare Star rating of at least 3 as found on the Adult Day Health Care Compare website. Exceptions may be considered for those facilities located in geographically-isolated/rural areas/difficult to place patients/specialty units or a good reason for a waiver (i.e. lack of applications). However, no rating of any facility will fall below a 2 rating.

**FACTOR 5: Inspection**: If the facility is determined by evaluators to be Technically Acceptable under Technical and Quality Control criteria, the VA may conduct an onsite inspection consisting of a two-tier inspection process. The first tier screening, which precedes an actual on-site inspection, may include review of staffing stability, specialized programs, staff development, activities/community integration and resident-centered care/cultural transformation programs. The second tier aspect of the inspection process occurs if the first tie r is passed and that is the on-site inspection by the VA. The inspection process will determine whether the facility is Technically Acceptable or unacceptable to the VA:

**FACTOR 6: Price Evaluation:** Price proposals will be evaluated by the Contracting Officer. The Government may use various price analysis techniques and procedures to make a price reasonableness determination. Offers that are not Technically Acceptable cannot be selected regardless of price. Pricing shall be based on Medicaid rates. A copy of the Medicaid rate for the Offeror's facility must be provided on a State's letterhead.

**FACTOR 7: Veterans Preference:** In determining the acquisition strategy application to an acquisition, the contracting officer shall consider, in the following order of priority, contracting preferences that ensure contracts may be awarded:

(a) To SDVOSBs
(b) To VOSBs, including but not limited to SDVOSBs
The contractor shall submit SDVOSB and VOSB information documenting this factor. Offeror and proposed subcontractors must be registered and verified in the VetBiz.gov VIP database (http://www.vetbiz.gov) to receive consideration for this factor.

**FACTOR 8: VA Mentor-Protégé Program:** In accordance with VAAR 852.219-72, Evaluation Factor for Participation in the VA Mentor-Protégé Program, the Government will offer preference to businesses with approved Mentor-Protégé Agreements. In order to receive credit under the evaluation factor, the offeror must provide with its proposal a copy of a signed letter issued by the VA Office of Small and Disadvantaged Business Utilization approving the offeror's Mentor-Protégé Agreement. Any SDVOSB or VOSB must be registered and verified in the VetBiz.gov VIP database (http://www.vetbiz.gov) to receive consideration for this factor.

**NOTE:** Past performance evaluations will be conducted using the questionnaire (Section D.3 of the solicitation), information obtained from the Contractor Performance Assessment Reporting System (CPARS) or Past Performance Information Retrieval System (PPIRS) and any other sources deemed appropriate. While the Government may elect to consider data obtained from other sources, as well as data on hand, the burden of providing current and complete past performance information rests with the offeror. The past performance information obtained will be used for both the responsibility determination and this evaluation factor.

All other factors considered equal, preference will be given to SDVOSB/VOSB concerns in accordance with VAAR 852.215-70 SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (DEC 2009)

**E.7 52.216-1 TYPE OF CONTRACT (APR 1984)**

The Government contemplates award of a Fixed-Price, Indefinite Quantity Contract, with Economic Price Adjustment (EPA), resulting from this solicitation.

(End of Provision)

**E.8 52.233-2 SERVICE OF PROTEST (SEP 2006)**

Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO),

shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

Rodney Cassidy
Administrative Contracting Officer

Hand-Carried Address:
Department of Veterans Affairs
Network Contracting Activity 8 (NCA 8)
8875 Hidden River Pkwy
Tampa FL 33637

Mailing Address:
Department of Veterans Affairs
Network Contracting Activity 8 (NCA 8)
8875 Hidden River Pkwy
Tampa FL 33637

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.
(End of Provision)

**E.9 VAAR 852.209-70 ORGANIZATIONAL CONFLICTS OF INTEREST (JAN 2008)**

(a) It is in the best interest of the Government to avoid situations which might create an organizational conflict of interest or where the offeror's performance of work under the contract may provide the contractor with an unfair competitive advantage. The term "organizational conflict of interest" means that because of other activities or relationships with other persons, a person is unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired, or the person has an unfair competitive advantage.

(b) The offeror shall provide a statement with its offer which describes, in a concise manner, all relevant facts concerning any past, present, or currently planned interest (financial, contractual, organizational, or otherwise) or actual or potential organizational conflicts of interest relating to the services to be provided under this solicitation. The offeror shall also provide statements with its offer containing the same information for any consultants and subcontractors identified in its proposal and which will provide services under the solicitation. The offeror may also provide relevant facts that show how its organizational and/or management system or other actions would avoid or mitigate any actual or potential organizational conflicts of interest.

(c) Based on this information and any other information solicited or obtained by the contracting officer, the contracting officer may determine that an organizational conflict of interest exists which would warrant disqualifying the contractor for award of the contract unless the organizational conflict of interest can be mitigated to the contracting officer's satisfaction by negotiating terms and conditions of the contract to that effect. If the conflict of interest cannot be mitigated and if the contracting officer finds that it is in the best interest of the United States to award the contract, the contracting officer shall request a waiver in accordance with FAR 9.503 and 48 CFR 809.503.

(d) Nondisclosure or misrepresentation of actual or potential organizational conflicts of interest at the time of the offer, or arising as a result of a modification to the contract, may result in the termination of the contract at no expense to the Government.
(End of Provision)

**E.10 VAAR 852.215-70 SERVICE-DISABLED VETERAN-OWNED AND VETERAN-OWNED SMALL BUSINESS EVALUATION FACTORS (DEC 2009)**

(a) In an effort to achieve socioeconomic small business goals, depending on the evaluation factors included in the solicitation, VA shall evaluate offerors based on their service-disabled veteran-owned or

veteran-owned small business status and their proposed use of eligible service-disabled veteran-owned small businesses and veteran-owned small businesses as subcontractors.

(b) Eligible service-disabled veteran-owned offerors will receive full credit, and offerors qualifying as veteran-owned small businesses will receive partial credit for the Service-Disabled Veteran-Owned and Veteran-owned Small Business Status evaluation factor. To receive credit, an offeror must be registered and verified in Vendor Information Pages (VIP) database. (http://www.VetBiz.gov).

(c) Non-veteran offerors proposing to use service-disabled veteran-owned small businesses or veteran-owned small businesses as subcontractors will receive some consideration under this evaluation factor. Offerors must state in their proposals the names of the SDVOSBs and VOSBs with whom they intend to subcontract and provide a brief description of the proposed subcontracts and the approximate dollar values of the proposed subcontracts. In addition, the proposed subcontractors must be registered and verified in the VetBiz.gov VIP database (http://www.vetbiz.gov).

(End of Provision)

**E.11 VAAR 852.233-70 PROTEST CONTENT/ALTERNATIVE DISPUTE RESOLUTION (JAN 2008)**

(a) Any protest filed by an interested party shall:

(1) Include the name, address, fax number, and telephone number of the protester;

(2) Identify the solicitation and/or contract number;

(3) Include an original signed by the protester or the protester's representative and at least one copy;

(4) Set forth a detailed statement of the legal and factual grounds of the protest, including a description of resulting prejudice to the protester, and provide copies of relevant documents;

(5) Specifically request a ruling of the individual upon whom the protest is served;

(6) State the form of relief requested; and

(7) Provide all information establishing the timeliness of the protest.

(b) Failure to comply with the above may result in dismissal of the protest without further consideration.

(c) Bidders/offerors and contracting officers are encouraged to use alternative dispute resolution (ADR) procedures to resolve protests at any stage in the protest process. If ADR is used, the Department of Veterans Affairs will not furnish any documentation in an ADR proceeding beyond what is allowed by the Federal Acquisition Regulation.

(End of Provision)

PLEASE NOTE: The correct mailing information for filing alternate protests is as follows:

Deputy Assistant Secretary for Acquisition and Logistics,
Risk Management Team, Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, DC 20420

Or for solicitations issued by the Office of Construction and Facilities Management:

Director, Office of Construction and Facilities Management
811 Vermont Avenue, N.W.
Washington, DC 20420

**E.12 VAAR 852.233-71 ALTERNATE PROTEST PROCEDURE (JAN 1998)**

As an alternative to filing a protest with the contracting officer, an interested party may file a protest with the Deputy Assistant Secretary for Acquisition and Materiel Management, Acquisition Administration Team, Department of Veterans Affairs, 810 Vermont Avenue, NW., Washington, DC 20420, or for solicitations issued by the Office of Construction and Facilities Management, the Director, Office of Construction and Facilities Management, 810 Vermont Avenue, NW., Washington, DC 20420. The protest will not be considered if the interested party has a protest on the same or similar issues pending with the contracting officer.

(End of Provision)

**E.13  VAAR 852.270-1  REPRESENTATIVES OF CONTRACTING OFFICERS (JAN 2008)**

The contracting officer reserves the right to designate representatives to act for him/her in furnishing technical guidance and advice or generally monitor the work to be performed under this contract. Such designation will be in writing and will define the scope and limitation of the designee's authority. A copy of the designation shall be furnished to the contractor.

(End of Provision)

**E.14    VAAR 852.271-70  NONDISCRIMINATION IN SERVICES PROVIDED TO BENEFICIARIES (JAN 2008)**

The contractor agrees to provide all services specified in this contract for any person determined eligible by the Department of Veterans Affairs, regardless of the race, color, religion, sex, or national origin of the person for whom such services are ordered. The contractor further warrants that he/she will not resort to subcontracting as a means of circumventing this provision.

(End of Provision)

**E.15   52.212-3   OFFEROR REPRESENTATIONS AND CERTIFICATIONS—COMMERCIAL ITEMS (APR 2016)**

The offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically via http://www.acquisition.gov. If an offeror has not completed the annual representations and certifications electronically at the System for Award Management (SAM) website, the offeror shall complete only paragraphs (c) through (r) of this provision.

(a) *Definitions.*  As used in this provision—

"Economically disadvantaged women-owned small business (EDWOSB) concern" means a small business concern that is at least 51 percent directly and unconditionally owned by, and the management and daily business operations of which are controlled by, one or more women who are citizens of the United States and who are economically disadvantaged in accordance with 13 CFR part 127. It automatically qualifies as a women-owned small business eligible under the WOSB Program.

"Forced or indentured child labor" means all work or service—

(1) Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or

(2) Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished by process or penalties.

"Highest-level owner" means the entity that owns or controls an immediate owner of the offeror, or that owns or controls one or more entities that control an immediate owner of the offeror. No entity owns or exercises control of the highest level owner.

"Immediate owner" means an entity, other than the offeror, that has direct control of the offeror. Indicators of control include, but are not limited to, one or more of the following: Ownership or interlocking management, identity of interests among family members, shared facilities and equipment, and the common use of employees.

"Inverted domestic corporation" means a foreign incorporated entity that meets the definition of an inverted domestic corporation under 6 U.S.C. 395(b), applied in accordance with the rules and definitions of 6 U.S.C. 395(c).

"Manufactured end product" means any end product in product and service codes (PSCs) 1000-9999, except—

(1) PSC 5510, Lumber and Related Basic Wood Materials;

(2) Product or Service Group (PSG) 87, Agricultural Supplies;

(3) PSG 88, Live Animals;

(4) PSG 89, Subsistence;

(5) PSC 9410, Crude Grades of Plant Materials;

(6) PSC 9430, Miscellaneous Crude Animal Products, Inedible;

(7) PSC 9440, Miscellaneous Crude Agricultural and Forestry Products;

(8) PSC 9610, Ores;

(9) PSC 9620, Minerals, Natural and Synthetic; and

(10) PSC 9630, Additive Metal Materials.

"Place of manufacture" means the place where an end product is assembled out of components, or otherwise made or processed from raw materials into the finished product that is to be provided to the Government. If a product is disassembled and reassembled, the place of reassembly is not the place of manufacture.

"Predecessor" means an entity that is replaced by a successor and includes any predecessors of the predecessor.

"Restricted business operations" means business operations in Sudan that include power production activities, mineral extraction activities, oil-related activities, or the production of military equipment, as those terms are defined in the Sudan Accountability and Divestment Act of 2007 (Pub. L. 110-174). Restricted business operations do not include business operations that the person (as that term is defined in Section 2 of the Sudan Accountability and Divestment Act of 2007) conducting the business can demonstrate—

(1) Are conducted under contract directly and exclusively with the regional government of southern Sudan;

(2) Are conducted pursuant to specific authorization from the Office of Foreign Assets Control in the Department of the Treasury, or are expressly exempted under Federal law from the requirement to be conducted under such authorization;

(3) Consist of providing goods or services to marginalized populations of Sudan;

(4) Consist of providing goods or services to an internationally recognized peacekeeping force or humanitarian organization;

(5) Consist of providing goods or services that are used only to promote health or education; or

(6) Have been voluntarily suspended.

"Sensitive technology"—

(1) Means hardware, software, telecommunications equipment, or any other technology that is to be used specifically—

(i) To restrict the free flow of unbiased information in Iran; or

(ii) To disrupt, monitor, or otherwise restrict speech of the people of Iran; and

(2) Does not include information or informational materials the export of which the President does not have the authority to regulate or prohibit pursuant to section 203(b)(3) of the International Emergency Economic Powers Act (50 U.S.C. 1702(b)(3)).

"Service-disabled veteran-owned small business concern"—

(1) Means a small business concern—

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and size standards in this solicitation.

"Small disadvantaged business concern", consistent with 13 CFR 124.1002, means a small business concern under the size standard applicable to the acquisition, that—

(1) Is at least 51 percent unconditionally and directly owned (as defined at 13 CFR 124.105) by—

(i) One or more socially disadvantaged (as defined at 13 CFR 124.103) and economically disadvantaged (as defined at 13 CFR 124.104) individuals who are citizens of the United States; and

(ii) Each individual claiming economic disadvantage has a net worth not exceeding $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(2) The management and daily business operations of which are controlled (as defined at 13.CFR 124.106) by individuals, who meet the criteria in paragraphs (1)(i) and (ii) of this definition.

"Subsidiary" means an entity in which more than 50 percent of the entity is owned—

(1) Directly by a parent corporation; or

(2) Through another subsidiary of a parent corporation.

"Successor" means an entity that has replaced a predecessor by acquiring the assets and carrying out the affairs of the predecessor under a new name (often through acquisition or merger). The term "successor" does not include new offices/divisions of the same company or a company that only changes its name. The extent of the responsibility of the successor for the liabilities of the predecessor may vary, depending on State law and specific circumstances.

"Veteran-owned small business concern" means a small business concern—

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

"Women-owned business concern" means a concern which is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

"Women-owned small business concern" means a small business concern—

(1) That is at least 51 percent owned by one or more women; or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

"Women-owned small business (WOSB) concern eligible under the WOSB Program" (in accordance with 13 CFR part 127), means a small business concern that is at least 51 percent directly and unconditionally owned by, and the management and daily business operations of which are controlled by, one or more women who are citizens of the United States.

(b)(1) *Annual Representations and Certifications.* Any changes provided by the offeror in paragraph (b)(2) of this provision do not automatically change the representations and certifications posted on the SAM website.

(2) The offeror has completed the annual representations and certifications electronically via the SAM website access through http://www.acquisition.gov. After reviewing the SAM database information, the offeror verifies by submission of this offer that the representations and certifications currently posted electronically at FAR 52.212-3, Offeror Representations and Certifications—Commercial Items, have been entered or updated in the last 12 months, are current, accurate, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this offer and are incorporated in this offer by reference (see FAR 4.1201), except for paragraphs .

(c) Offerors must complete the following representations when the resulting contract will be performed in the United States or its outlying areas. Check all that apply.

(1) *Small business concern*. The offeror represents as part of its offer that it [ ] is, [ ] is not a small business concern.

(2) *Veteran-owned small business concern.* [*Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.*] The offeror represents as part of its offer that it [ ] is, [ ] is not a veteran-owned small business concern.

(3) *Service-disabled veteran-owned small business concern.* [*Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (c)(2) of this provision.*] The offeror represents as part of its offer that it [ ] is, [ ] is not a service-disabled veteran-owned small business concern.

(4) *Small disadvantaged business concern.* [*Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.*] The offeror represents that it [ ] is, [ ] is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(5) *Women-owned small business concern*. [*Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.*] The offeror represents that it [ ] is, [ ] is not a women-owned small business concern.

(6) WOSB concern eligible under the WOSB Program. [Complete only if the offeror represented itself as a women-owned small business concern in paragraph (c)(5) of this provision.] The offeror represents that—

(i) It [ ] is, [ ] is not a WOSB concern eligible under the WOSB Program, has provided all the required documents to the WOSB Repository, and no change in circumstances or adverse decisions have been issued that affects its eligibility; and

(ii) It [ ] is, [ ] is not a joint venture that complies with the requirements of 13 CFR part 127, and the representation in paragraph (c)(6)(i) of this provision is accurate for each WOSB concern eligible under the WOSB Program participating in the joint venture. [*The offeror shall enter the name or names of the WOSB concern eligible under the WOSB Program and other small businesses that are participating in the joint venture:* ____________.] Each WOSB concern eligible under the WOSB Program participating in the joint venture shall submit a separate signed copy of the WOSB representation.

(7) Economically disadvantaged women-owned small business (EDWOSB) concern. [*Complete only if the offeror represented itself as a WOSB concern eligible under the WOSB Program in (c)(6) of this provision.*] The offeror represents that—

(i) It [ ] is, [ ] is not an EDWOSB concern, has provided all the required documents to the WOSB Repository, and no change in circumstances or adverse decisions have been issued that affects its eligibility; and

(ii) It [ ] is, [ ] is not a joint venture that complies with the requirements of 13 CFR part 127, and the representation in paragraph (c)(7)(i) of this provision is accurate for each EDWOSB concern participating in the joint venture. [*The offeror shall enter the name or names of the EDWOSB concern and other small businesses that are participating in the joint venture:* ____________.] Each EDWOSB concern participating in the joint venture shall submit a separate signed copy of the EDWOSB representation.

**Note:** Complete paragraphs (c)(8) and (c)(9) only if this solicitation is expected to exceed the simplified acquisition threshold.

(8) *Women-owned business concern (other than small business concern).* [*Complete only if the offeror is a women-owned business concern and did not represent itself as a small business concern in paragraph (c)(1) of this provision.*] The offeror represents that it [ ] is a women-owned business concern.

(9) *Tie bid priority for labor surplus area concerns.* If this is an invitation for bid, small business offerors may identify the labor surplus areas in which costs to be incurred on account of manufacturing or production (by offeror or first-tier subcontractors) amount to more than 50 percent of the contract price:

______________________________________________

(10) *HUBZone small business concern.* [*Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.*] The offeror represents, as part of its offer, that—

(i) It [ ] is, [ ] is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR Part 126; and

(ii) It [ ] is, [ ] is not a joint venture that complies with the requirements of 13 CFR Part 126, and the representation in paragraph (c)(10)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. [The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture:_____________.] Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(d) Representations required to implement provisions of Executive Order 11246—

(1) *Previous contracts and compliance.* The offeror represents that—

(i) It [ ] has, [ ] has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation; and

(ii) It [ ] has, [ ] has not filed all required compliance reports.

(2) *Affirmative Action Compliance.* The offeror represents that—

(i) It [ ] has developed and has on file, [ ] has not developed and does not have on file, at each establishment, affirmative action programs required by rules and regulations of the Secretary of Labor (41 CFR parts 60-1 and 60-2), or

(ii) It [ ] has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(e) *Certification Regarding Payments to Influence Federal Transactions* (31 U.S.C. 1352). (Applies only if the contract is expected to exceed $150,000.) By submission of its offer, the offeror certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress or an employee of a Member of Congress on his or her behalf in connection with the award of any resultant contract. If any registrants under the Lobbying Disclosure Act of 1995 have made a lobbying contact on behalf of the offeror with respect to this contract, the offeror shall complete and submit, with its offer, OMB Standard Form LLL, Disclosure of Lobbying Activities, to provide the name of the registrants. The offeror need not report regularly employed officers or employees of the offeror to whom payments of reasonable compensation were made.

(f) *Buy American Certificate*. (Applies only if the clause at Federal Acquisition Regulation (FAR) 52.225-1, Buy American—Supplies, is included in this solicitation.)

(1) The offeror certifies that each end product, except those listed in paragraph (f)(2) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The offeror shall list as foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of "domestic end product." The terms "commercially available off-the-shelf (COTS) item," "component," "domestic end product," "end product," "foreign end product," and "United States" are defined in the clause of this solicitation entitled "Buy American—Supplies."

(2) Foreign End Products:

| Line Item No | Country of Origin |
| --- | --- |
| ______________ | _________________ |
| ______________ | _________________ |
| ______________ | _________________ |

*[List as necessary]*

(3) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(g)(1) *Buy American—Free Trade Agreements—Israeli Trade Act Certificate.* (Applies only if the clause at FAR 52.225-3, Buy American—Free Trade Agreements—Israeli Trade Act, is included in this solicitation.)

(i) The offeror certifies that each end product, except those listed in paragraph (g)(1)(ii) or (g)(1)(iii) of this provision, is a domestic end product and that for other than COTS items, the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States. The terms "Bahrainian, Moroccan, Omani, Panamanian, or Peruvian end product," "commercially available off-the-shelf (COTS) item," "component," "domestic end product," "end product," "foreign end product," "Free Trade Agreement country," "Free Trade Agreement country end product," "Israeli end product," and "United States" are defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act."

(ii) The offeror certifies that the following supplies are Free Trade Agreement country end products (other than Bahrainian, Moroccan, Omani, Panamanian, or Peruvian end products) or Israeli end products as defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act":

Free Trade Agreement Country End Products (Other than Bahrainian, Moroccan, Omani, Panamanian, or Peruvian End Products) or Israeli End Products:

| Line Item No. | Country of Origin |
|---|---|
| ______________ | _________________ |
| ______________ | _________________ |
| ______________ | _________________ |

*[List as necessary]*

(iii) The offeror shall list those supplies that are foreign end products (other than those listed in paragraph (g)(1)(ii) of this provision) as defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act." The offeror shall list as other foreign end products those end products manufactured in the United States that do not qualify as domestic end products, i.e., an end product that is not a COTS item and does not meet the component test in paragraph (2) of the definition of "domestic end product."

Other Foreign End Products:

| Line Item No. | Country of Origin |
|---|---|
| ______________ | _________________ |
| ______________ | _________________ |
| ______________ | _________________ |

*[List as necessary]*

(iv) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25.

(2) *Buy American—Free Trade Agreements—Israeli Trade Act Certificate, Alternate I.* If Alternate I to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

(g)(1)(ii) The offeror certifies that the following supplies are Canadian end products as defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act":

Canadian End Products:

Line Item No.

______________________________________

______________________________________

______________________________________

*[List as necessary]*

(3) *Buy American—Free Trade Agreements—Israeli Trade Act Certificate, Alternate II.* If Alternate II to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

(g)(1)(ii) The offeror certifies that the following supplies are Canadian end products or Israeli end products as defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act":

Canadian or Israeli End Products:

| Line Item No. | Country of Origin |
|---|---|
| _____________ | _______________ |
| _____________ | _______________ |
| _____________ | _______________ |

*[List as necessary]*

(4) *Buy American—Free Trade Agreements—Israeli Trade Act Certificate, Alternate III.* If Alternate III to the clause at FAR 52.225-3 is included in this solicitation, substitute the following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic provision:

(g)(1)(ii) The offeror certifies that the following supplies are Free Trade Agreement country end products (other than Bahrainian, Korean, Moroccan, Omani, Panamanian, or Peruvian end products) or Israeli end products as defined in the clause of this solicitation entitled "Buy American—Free Trade Agreements—Israeli Trade Act":

Free Trade Agreement Country End Products (Other than Bahrainian, Korean, Moroccan, Omani, Panamanian, or Peruvian End Products) or Israeli End Products:

| Line Item No. | Country of Origin |
|---|---|
| _____________ | _______________ |
| _____________ | _______________ |
| _____________ | _______________ |

*[List as necessary]*

(5) *Trade Agreements Certificate.* (Applies only if the clause at FAR 52.225-5, Trade Agreements, is included in this solicitation.)

(i) The offeror certifies that each end product, except those listed in paragraph (g)(5)(ii) of this provision, is a U.S.-made or designated country end product, as defined in the clause of this solicitation entitled "Trade Agreements".

(ii) The offeror shall list as other end products those end products that are not U.S.-made or designated country end products.

Other End Products:

| Line Item No. | Country of Origin |
| --- | --- |
| ______________ | _________________ |
| ______________ | _________________ |
| ______________ | _________________ |

*[List as necessary]*

(iii) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25. For line items covered by the WTO GPA, the Government will evaluate offers of U.S.-made or designated country end products without regard to the restrictions of the Buy American statute. The Government will consider for award only offers of U.S.-made or designated country end products unless the Contracting Officer determines that there are no offers for such products or that the offers for such products are insufficient to fulfill the requirements of the solicitation.

(h) *Certification Regarding Responsibility Matters* (Executive Order 12689). (Applies only if the contract value is expected to exceed the simplified acquisition threshold.) The offeror certifies, to the best of its knowledge and belief, that the offeror and/or any of its principals—

(1) [ ] Are, [ ] are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(2) [ ] Have, [ ] have not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a Federal, state or local government contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, violating Federal criminal tax laws, or receiving stolen property;

(3) [ ] Are, [ ] are not presently indicted for, or otherwise criminally or civilly charged by a Government entity with, commission of any of these offenses enumerated in paragraph (h)(2) of this clause; and

(4) [ ] Have, [ ] have not, within a three-year period preceding this offer, been notified of any delinquent Federal taxes in an amount that exceeds $3,500 for which the liability remains unsatisfied.

(i) Taxes are considered delinquent if both of the following criteria apply:

(A) *The tax liability is finally determined.* The liability is finally determined if it has been assessed. A liability is not finally determined if there is a pending administrative or judicial challenge. In the case of a judicial challenge to the liability, the liability is not finally determined until all judicial appeal rights have been exhausted.

(B) *The taxpayer is delinquent in making payment.* A taxpayer is delinquent if the taxpayer has failed to pay the tax liability when full payment was due and required. A taxpayer is not delinquent in cases where enforced collection action is precluded.

(ii) *Examples.*

(A) The taxpayer has received a statutory notice of deficiency, under I.R.C. Sec. 6212, which entitles the taxpayer to seek Tax Court review of a proposed tax deficiency. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek Tax Court review, this will not be a final tax liability until the taxpayer has exercised all judicial appeal rights.

(B) The IRS has filed a notice of Federal tax lien with respect to an assessed tax liability, and the taxpayer has been issued a notice under I.R.C. Sec. 6320 entitling the taxpayer to request a hearing with the IRS Office of Appeals contesting the lien filing, and to further appeal to the Tax Court if the IRS determines to sustain the lien filing. In the course of the hearing, the taxpayer is entitled to contest the underlying tax liability because the taxpayer has had no prior opportunity to contest the liability. This is not a delinquent tax because it is not a final tax liability. Should the taxpayer seek tax court review, this will not be a final tax liability until the taxpayer has exercised all judicial appeal rights.

(C) The taxpayer has entered into an installment agreement pursuant to I.R.C. Sec. 6159. The taxpayer is making timely payments and is in full compliance with the agreement terms. The taxpayer is not delinquent because the taxpayer is not currently required to make full payment.

(D) The taxpayer has filed for bankruptcy protection. The taxpayer is not delinquent because enforced collection action is stayed under 11 U.S.C. 362 (the Bankruptcy Code).

(i) *Certification Regarding Knowledge of Child Labor for Listed End Products (Executive Order 13126).*

(1) *Listed end products.*

| Listed End Product | Listed Countries of Origin |
| --- | --- |

(2) *Certification. [If the Contracting Officer has identified end products and countries of origin in paragraph (i)(1) of this provision, then the offeror must certify to either (i)(2)(i) or (i)(2)(ii) by checking the appropriate block.]*

[ ] (i) The offeror will not supply any end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product.

[ ] (ii) The offeror may supply an end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that it has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture any such end product furnished under this contract. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

(j) *Place of manufacture.* (Does not apply unless the solicitation is predominantly for the acquisition of manufactured end products.) For statistical purposes only, the offeror shall indicate whether the place of manufacture of the end products it expects to provide in response to this solicitation is predominantly—

(1) __ In the United States (Check this box if the total anticipated price of offered end products manufactured in the United States exceeds the total anticipated price of offered end products manufactured outside the United States); or

(2) __ Outside the United States.

(k) *Certificates regarding exemptions from the application of the Service Contract Labor Standards.* (Certification by the offeror as to its compliance with respect to the contract also constitutes its certification as to compliance by its subcontractor if it subcontracts out the exempt services.)

[ ] (1) Maintenance, calibration, or repair of certain equipment as described in FAR 22.1003-4(c)(1). The offeror [ ] does [ ] does not certify that—

(i) The items of equipment to be serviced under this contract are used regularly for other than Governmental purposes and are sold or traded by the offeror (or subcontractor in the case of an exempt subcontract) in substantial quantities to the general public in the course of normal business operations;

(ii) The services will be furnished at prices which are, or are based on, established catalog or market prices (see FAR 22.1003- 4(c)(2)(ii)) for the maintenance, calibration, or repair of such equipment; and

(iii) The compensation (wage and fringe benefits) plan for all service employees performing work under the contract will be the same as that used for these employees and equivalent employees servicing the same equipment of commercial customers.

[ ] (2) Certain services as described in FAR 22.1003- 4(d)(1). The offeror [ ] does [ ] does not certify that—

(i) The services under the contract are offered and sold regularly to non-Governmental customers, and are provided by the offeror (or subcontractor in the case of an exempt subcontract) to the general public in substantial quantities in the course of normal business operations;

(ii) The contract services will be furnished at prices that are, or are based on, established catalog or market prices (see FAR 22.1003-4(d)(2)(iii));

(iii) Each service employee who will perform the services under the contract will spend only a small portion of his or her time (a monthly average of less than 20 percent of the available hours on an annualized basis, or less than 20 percent of available hours during the contract period if the contract period is less than a month) servicing the Government contract; and

(iv) The compensation (wage and fringe benefits) plan for all service employees performing work under the contract is the same as that used for these employees and equivalent employees servicing commercial customers.

(3) If paragraph (k)(1) or (k)(2) of this clause applies—

(i) If the offeror does not certify to the conditions in paragraph (k)(1) or (k)(2) and the Contracting Officer did not attach a Service Contract Labor Standards wage determination to the solicitation, the offeror shall notify the Contracting Officer as soon as possible; and

(ii) The Contracting Officer may not make an award to the offeror if the offeror fails to execute the certification in paragraph (k)(1) or (k)(2) of this clause or to contact the Contracting Officer as required in paragraph (k)(3)(i) of this clause.

(l) *Taxpayer Identification Number (TIN)* (26 U.S.C. 6109, 31 U.S.C. 7701). (Not applicable if the offeror is required to provide this information to the SAM database to be eligible for award.)

(1) All offerors must submit the information required in paragraphs (l)(3) through (l)(5) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the Internal Revenue Service (IRS).

(2) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(3) *Taxpayer Identification Number (TIN).*

[ ] TIN: ______________________.

[ ] TIN has been applied for.

[ ] TIN is not required because:

[ ] Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

[ ] Offeror is an agency or instrumentality of a foreign government;

[ ] Offeror is an agency or instrumentality of the Federal Government.

(4) *Type of organization.*

[ ] Sole proprietorship;

[ ] Partnership;

[ ] Corporate entity (not tax-exempt);

[ ] Corporate entity (tax-exempt);

[ ] Government entity (Federal, State, or local);

[ ] Foreign government;

[ ] International organization per 26 CFR 1.6049-4;

[ ] Other _________________________.

(5) *Common parent.*

[ ] Offeror is not owned or controlled by a common parent;

[ ] Name and TIN of common parent:

Name _____________________.

TIN _____________________.

(m) *Restricted business operations in Sudan.* By submission of its offer, the offeror certifies that the offeror does not conduct any restricted business operations in Sudan.

(n) *Prohibition on Contracting with Inverted Domestic Corporations*.

(1) Government agencies are not permitted to use appropriated (or otherwise made available) funds for contracts with either an inverted domestic corporation, or a subsidiary of an inverted domestic corporation, unless the exception at 9.108-2(b) applies or the requirement is waived in accordance with the procedures at 9.108-4.

(2) *Representation*. The Offeror represents that—

(i) It [ ] is, [ ] is not an inverted domestic corporation; and

(ii) It [ ] is, [ ] is not a subsidiary of an inverted domestic corporation.

(o) *Prohibition on contracting with entities engaging in certain activities or transactions relating to Iran.*

(1) The offeror shall email questions concerning sensitive technology to the Department of State at CISADA106@state.gov.

(2) *Representation and certifications.* Unless a waiver is granted or an exception applies as provided in paragraph (o)(3) of this provision, by submission of its offer, the offeror—

(i) Represents, to the best of its knowledge and belief, that the offeror does not export any sensitive technology to the government of Iran or any entities or individuals owned or controlled by, or acting on behalf or at the direction of, the government of Iran;

(ii) Certifies that the offeror, or any person owned or controlled by the offeror, does not engage in any activities for which sanctions may be imposed under section 5 of the Iran Sanctions Act; and

(iii) Certifies that the offeror, and any person owned or controlled by the offeror, does not knowingly engage in any transaction that exceeds $3,500 with Iran's Revolutionary Guard Corps or any of its officials, agents, or affiliates, the property and interests in property of which are blocked pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (see OFAC's Specially Designated Nationals and Blocked Persons List at *http://www.treasury.gov/ofac/downloads/t11sdn.pdf*).

(3) The representation and certification requirements of paragraph (o)(2) of this provision do not apply if—

(i) This solicitation includes a trade agreements certification (*e.g.*, 52.212–3(g) or a comparable agency provision); and

(ii) The offeror has certified that all the offered products to be supplied are designated country end products.

(p) *Ownership or Control of Offeror*. (Applies in all solicitations when there is a requirement to be registered in SAM or a requirement to have a DUNS Number in the solicitation).

(1) The Offeror represents that it [ ] has or [ ] does not have an immediate owner. If the Offeror has more than one immediate owner (such as a joint venture), then the Offeror shall respond to paragraph (2) and if applicable, paragraph (3) of this provision for each participant in the joint venture.

(2) If the Offeror indicates "has" in paragraph (p)(1) of this provision, enter the following information:

Immediate owner CAGE code: ____.

Immediate owner legal name: ____.

(*Do not use a "doing business as" name*)

Is the immediate owner owned or controlled by another entity: [ ] Yes or [ ] No.

(3) If the Offeror indicates "yes" in paragraph (p)(2) of this provision, indicating that the immediate owner is owned or controlled by another entity, then enter the following information:

Highest-level owner CAGE code: ____.

Highest-level owner legal name: ____.

(*Do not use a "doing business as" name*)

(q) *Representation by Corporations Regarding Delinquent Tax Liability or a Felony Conviction under any Federal Law.*

(1) As required by sections 744 and 745 of Division E of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235), and similar provisions, if contained in subsequent appropriations acts, The Government will not enter into a contract with any corporation that—

(i) Has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, where the awarding agency is aware of the unpaid tax liability, unless an agency has considered suspension or debarment of the corporation and made a determination that suspension or debarment is not necessary to protect the interests of the Government; or

(ii) Was convicted of a felony criminal violation under any Federal law within the preceding 24 months, where the awarding agency is aware of the conviction, unless an agency has considered suspension or debarment of the corporation and made a determination that this action is not necessary to protect the interests of the Government.

(2) The Offeror represents that—

(i) It is [ ] is not [ ] a corporation that has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability; and

(ii) It is [ ] is not [ ] a corporation that was convicted of a felony criminal violation under a Federal law within the preceding 24 months.

(r) *Predecessor of Offeror*. (Applies in all solicitations that include the provision at 52.204-16, Commercial and Government Entity Code Reporting.)

(1) The Offeror represents that it [ ] is or [ ] is not a successor to a predecessor that held a Federal contract or grant within the last three years.

(2) If the Offeror has indicated "is" in paragraph (r)(1) of this provision, enter the following information for all predecessors that held a Federal contract or grant within the last three years (if more than one predecessor, list in reverse chronological order):

Predecessor CAGE code: ____ (or mark "Unknown").

Predecessor legal name: ____.

*(Do not use a "doing business as" name).*

(End of Provision)

**E.16 52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)**

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of those provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a solicitation provision may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html
http://www.va.gov/oal/library/vaar/

(End of Provision)

| FAR Number | Title | Date |
|---|---|---|
| 52.204-16 | COMMERCIAL AND GOVERNMENT ENTITY CODE REPORTING | JUL 2015 |
| 52.225-25 | PROHIBITION ON CONTRACTING WITH ENTITIES ENGAGING IN CERTAIN ACTIVITIES OR TRANSACTIONS RELATING TO IRAN—REPRESENTATION AND CERTIFICATIONS | OCT 2015 |
| 52.232-38 | SUBMISSION OF ELECTRONIC FUNDS TRANSFER INFORMATION WITH OFFER | JUL 2013 |

(End of Addendum to 52.212-1)

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

BPA NO. | 1. CONTRACT ID CODE | PAGE 1 OF PAGES 1

2. AMENDMENT/MODIFICATION NUMBER: 00002
3. EFFECTIVE DATE: 05-15-2018
4. REQUISITION/PURCHASE REQ. NUMBER:
5. PROJECT NUMBER (if applicable):

6. ISSUED BY — CODE: Y

Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)

8875 Hidden River Pkwy Suite 525
Tampa FL 33637

7. ADMINISTERED BY (If other than Item 6) — CODE: 00248

Department of Veterans Affairs
Network Contracting Office 8 (NCO 8)

8875 Hidden River Pkwy
Tampa FL 33637

8. NAME AND ADDRESS OF CONTRACTOR (Number, street, county, State and ZIP Code)

To all Offerors/Bidders

CODE | FACILITY CODE

(X) | 9A. AMENDMENT OF SOLICITATION NUMBER: VA248-17-R-0713

X | 9B. DATED (SEE ITEM 11): 05-11-2017

10A. MODIFICATION OF CONTRACT/ORDER NUMBER:

10B. DATED (SEE ITEM 13):

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [X] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or electronic communication which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by letter or electronic communication, provided each letter or electronic communication makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified. ** HOUR & DATE for Receipt of Offers is EXTENDED to:

12. ACCOUNTING AND APPROPRIATION DATA (If required)

### 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

**E. IMPORTANT:** Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of amendment A00002 to this solicitation is to extend the due date to 05-31-2018 at 12:00 PM.

All other terms and conditions remain unchanged.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): Rodney Cassidy Contracting Officer

15B. CONTRACTOR/OFFEROR

(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA

BY (Signature of Contracting Officer)

16C. DATE SIGNED

**From:** Cassidy, Rodney F.
**To:** "Michelle N"
**Subject:** VA248-17-R-0713 -unsuccessful offeror notification.pdf
**Attachments:** image001.png
VA248-17-R-0713 -unsuccessful offeror notification.pdf

---

Please see attached letter, If you have any questions please give me a call.

Thank you

Rodney F Cassidy
Contract Specialist
Contracting/Medical Sharing NCO-8
Service Area Office - East
Department of Veterans Affairs - VHA
8875 Hidden River Pkwy Suite 525
Tampa, Fl 33637
Phone: (813)-631-2828
Fax: (813) 631-3520
E-mail: rodney.cassidy@va.gov

INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals." As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**.

**NOTICE OF CONFIDENTIALITY - This message is intended only for the person(s) or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, and/or copying of this message (or of the information contained herein) by or to anyone other than the intended recipient(s) is prohibited. If you have received this message in error, please notify the sender by reply email and destroy the original message and all copies.**



DEPARTMENT OF VETERANS AFFAIRS
Network Contracting Office - 8
8875 Hidden River Suite 525
Tampa, Florida 33637

August 08, 2018

Worldwide Health Services
Attn: Ms. Michelle Nicholas
2300 Palm Beach Lakes Blvd
STE 105
West Palm Beach, FL 32063

Re: Solicitation VA248-17-R-0713, Adult Day Health Care

Dear Ms. Nicholas;

Reference is made to Request for Proposal VA248-17-R-0713, for providing Community Adult Day Care Services in support of the West Palm Beach Veterans Affairs Medical Center.

Based on the evaluation factors and terms and conditions listed in the solicitation, your facility was not selected for award. West Palm Beach Veterans Affairs Medical Center does not recommend approval of a contract with your facility at this time.

There were several deficiencies noted that contributed to this decision, including:

- lack of sufficient record keeping
- insufficient medical screening procedures
- required minimum staffing ratio was not met
- adequate staff to administer required medication
- inability to manage 30 clients as the State License suggest
- no planned curriculum appropriate for therapeutic purposes not curriculum for memory care, which is an important concern for VA patients
- Some safety concerns: No monthly fire drills conducted, electrical safety (outlet protectors missing), no key or tool to open bathroom doors, janitorial chemicals and supplies were being stored in an unlocked cabinet in common area, no documentation of emergency light testing.

Based on the foregoing, Worldwide Health Services was not selected for award due to the safety concerns, staffing, and ability to adequately provide the level of care for our population.

We sincerely thank you for your interest and participation in this procurement. A new solicitation for Community Adult Day Health Care (CADHC) will be issued in the near future. We hope you will continue your interest in the endeavor to provide Adult Daycare for our nations Veterans.

Should you have any questions concerning this acquisition, please contact Rodney Cassidy at 813-631-2828 (voice), 813-631-3520 (fax), rodney.cassidy@va.gov (email).

Yamil Rodriguez
Contracting Officer